### H. H. McLane v. Mary C. Paschal.

No. 6953.

1. **Homestead—Excess in Value.**—In 1859 Paschal and wife executed to McLane, to secure a debt, a deed of trust upon lots 27 and 31, containing about nine acres of land, the homestead of the grantors. February 21, 1868, Paschal died insolvent. His widow, the appellant, asked that these lots be set apart to her as the homestead. Appellant contested her claim. It was urged that the lots were largely in excess in value of two thousand dollars at the death of the husband. *Held:*

1. The homestead rights against the deed of trust became fixed upon the death of the husband.

2. The right of the lien holder upon establishing his claim was only to the excess in value, if such existed, of the homestead at the death.

3. It was proper to submit to the jury as the measure of exemption its market value at the time of the husband's death.

2. **Value—Assessment.**—Assessment rolls are not competent evidence on a question of value of property listed upon such roll.

3. **Assessment—Admission.**—To authorize a rendition of property for taxation admissible against the party rendering it, it would be necessary to show, where the assessment was by an agent, that the agent had authority to make the assessment and to estimate the value. Such testimony could only tend to prove the value for the year of the assessment.

4. **Verdict.**—A finding, "We the jury find from the evidence that said lots 31 and 27, with improvements, would not have sold in the market for cash on April 22, 1859, and February 21, 1868, for more than $2000," includes the fact that at February 21, 1868, the lots, with improvements, did not exceed $2000 in value, and was sufficient as a basis for judgment against the creditor asserting his lien.

5. **Argument of Counsel.**—Counsel for appellee in the closing argument addressing the jury used this language, "This case was brought here on appeal from the County Court, was tried and appealed; was reversed and remanded, and tried again in this court, both juries finding all of blocks 27 and 31, together with improvements, to be her homestead," and after exceptions were taken to the remarks counsel again stated to the jury about the same in substance, viz., "that two juries had already found this

property to be the old lady's homestead and he expected this jury would do the same."
It not appearing probable that the jury were influenced thereby the language used is no
ground for reversal.

6. **Costs.**—The costs incurred in a contest by a creditor against the setting apart to
the widow and children the homestead, when resulting against the creditor making such
contest, are properly adjudged against him under Revised Statutes, article 2198. .

Appeal from Bexar. Tried below before Hon. Geo. H. Noonan.
The opinion states the case.

*John H. Shook* and *Simpson & James*, for appellant. —1. It is submitted as a proposition that in fixing the homestead of a survivor under the
Constitution and laws in force on April 22, 1859, as against creditors,
the proper date to consult as to values is the term of the Probate Court
next after the filing of the original inventory and list of claims in the
estate of the deceased. Const. 1845, sec. 22; Pasch. Dig., art. 1305;
McLane v. Paschal, 62 Texas, 102; Wood v. Wheeler, 7 Texas, 16; North
v. Shearn, 15 Texas, 175; Paschal v. Cushman, 26 Texas, 74; Williams
v. Jenkins, 25 Texas, 279; Connell v. Chandler, 11 Texas, 251; Thomp.
on Home., secs. 10, 118, 116, 324, 323, 678, 677, and cases cited.

2. A public record such as assessments made and kept by a public
officer in the line of his official duty are competent evidence of value of
property and of any other fact required by law to be inquired of by such
officer. 1 Greenl. Ev., secs. 482–4; Woods' Prac. Ev., sec. 224.

3. The court erred in excluding from evidence that portion of the assessment list rendered by "Thos. M. Paschal for mother" to the assessor
of Bexar County, in the year 1869, which related to the improvements on
block No. 27, said list being offered in evidence, so far as it related to
improvements, in connection with the plaintiff's testimony to the effect
that said improvements after 1859 and until a few years before the trial
constantly deteriorated in value; and plaintiff no where denied the agency
of her son Thomas M. Paschal, but admitted that she had paid all the
taxes, thereby ratifying said assessment. Inventory book to be kept by
the assessor and collector of taxes. Pasch. Dig., art. 7491.

4. Improper remarks of the successful counsel to the jury which were
calculated to injure the opposite party and which probably injured him
is ground for reversal. Particularly is this the case where the verdict is
excessive or the preponderance of evidence against the verdict. Dis. Ct.
Rules Nos. 39 and 121; Willis & Bro. v. McNeill, 57 Texas, 474; St. L.
& T. Ry. Co. v. Jarrell, 60 Texas, 268; Hatch v. The State, 8 Ct. App.,
416; H. & T. C. Ry. Co. v. O'Hare, 64 Texas, 600; I. & G. N. Ry. Co.
v. Irvine, 64 Texas, 529; G. H. & S. A. Ry. Co. v. Cooper, 70 Texas, 57.

5. It is submitted that where it is made the duty of the court to ascertain and set aside the homestead that the costs of such inquiry and
action should be borne by the estate, and not by a creditor who seeks in

such proceeding to have such homestead confined to what the law re--
quires.    Pasch. Dig., art 1305.

6.   Should the 21st day of February, 1868, be held the true date for·
taking values, then the judgment rendered does not find support in the
verdict, for the finding of the jury as to values on said date is that lots.
31 and 27 alone were of the value of $2000, regardless of improvements.

The verdict is as follows:   "We the jury find in the case of Mary C.
Paschal v. The Estate of I. A. Paschal et al., as follows:

"1.   We find that lots 31 and 27 were used and occupied by I. A. Pas-
chal and Mary C. Paschal on April 22, 1859, and on February 21, 1868,.
as their homestead.

"2.   We find the value of said lots 31 and 27 including all improve--
ments on April 22, 1859, to be $2000.

"3.   We find the value of said lots 31 and 27 on February 21, 1868,
to be of the value of $2000.

"4.   We the jury find from the evidence that said lots 31 and 27, with.
improvements, would not have sold in the market for cash on April 22,.
1859, and February 21, 1868, for more than $2000."

The jury found in section 3 of their verdict that on February 21, 1868,.
the lots alone were worth $2000.   Unless this finding is corrected and
amended by section 4 of the verdict,   here they find that the lots and.
improvements would not have then sold for more than $2000, the judg--
ment does not conform to the verdict.   We submit that the verdict is.
contradictory in its terms and leaves it uncertain whether the jury valued
the lots and improvements on February 21, 1868, at two thousand dol-
lars or at a greater sum.

*C. Upson* and *Denman & Franklin*, for appellee, filed brief and argu-
ment.

STAYTON, CHIEF JUSTICE.—This cause on two former occasions was.
before this court, and will be found reported in 47 Texas, 365, and in 62·
Texas, 102.

On this appeal no question arises whether the two lots numbered 27 and
31 were in fact the homestead of I. A. Paschal and his wife on April 22,
1859, nor as to their so continuing until his death, which occurred on
February 21, 1868.

Mrs. Paschal, after the death of her husband, asked the Probate Court
to set aside the two lots to her as homestead, and the claim to this was
resisted by appellant on the ground that the estate was insolvent and the
property, including the land and improvements thereon, of greater value
than two thousand dollars.

Appellant was the owner of an admitted claim against the estate of I.

A. Paschal, secured by lien on the two lots given through a trust deed executed by I. A. Paschal and wife on April 22, 1859.

Under the law as it existed at the time the debt due to appellant was created and secured as stated, the homestead exempted from forced sale could not exceed in value two thousand dollars, and in the valuation improvements as well as the land were to be considered.

On the last trial the court below submitted to the jury the following issues and charges:

1. Were said lots 31 and 27 or any part thereof used and occupied by said I. A. Paschal and Mary C. Paschal on April 22, 1859, and on February 21, 1868, as their homestead? If so, state how much and what portion was used as such homestead.

2. What was the value on April 22, 1859, of the property, including improvements, found by you under the previous question to be the homestead on April 22, 1859?

3. What was the value on the 21st day of February, 1868, of the property, including improvements, found by you under the previous question No. 2 to be the homestead on February 21, 1868?

4. The value in law of property is what it can be fairly and reasonably sold for on the market for cash, and in ascertaining what such property was worth at the respective dates aforesaid you will determine from the evidence what such property could then have been sold for on the market for cash.

5. If you find from the evidence that the property aforesaid was the homestead of I. A. Paschal and wife, and that the property so ascertained by you to have been the homestead of said I. A. Paschal and wife on April 22, 1859, and on February 21, 1868, was not on either of said dates of a greater value than two thousand dollars, then you need not inquire further into this cause but report your verdict accordingly in answer to the questions aforesaid.

Other issues were submitted which it became unnecessary for the jury to pass upon with a view to the adjustment of the rights of the parties on the event named in the fifth paragraph of the charge.

On the first issue the jury found "that lots 31 and 27 were used and occupied by I. A. Paschal and Mary C. Paschal on April 22, 1859, and on February 21, 1868, as their homestead."

On the second and third issues they found: "2. We find the value of said lots 31 and 27, including all improvements, on April 22, 1859, to be two thousand dollars.

"3. We find the value of said lots 31 and 27 on February 21, 1868, to be of the value of two thousand dollars."

The fourth finding was: "We the jury find from the evidence that said lots 31 and 27, with improvements, would not have sold in the mar-

ket for cash on April 22, 1859, and February 21, 1868, for more than two thousand dollars."

While the evidence was conflicting as to the value of the property at the dates to which the charges restricted the findings, it is conceded for appellant that there was evidence sufficient to sustain the findings.

The assignments of error are:

" 1. The court erred in admitting testimony concerning value in determining the homestead of plaintiff as to the date of the execution of McLane's deed of trust, dated April 22, 1859.

" 2. The court erred in admitting testimony concerning said value as of the date of I. A. Paschal's death on February 21, 1868.

" 3. The court erred in admitting testimony on said issue of value as of any other than the date when it first became the duty of the Probate Court under the law to ascertain and set apart to plaintiff her homestead, which was the first term after the filing of. the inventory and list of claims in I. A. Paschal's estate, said date of filing being December 3, 1868.

" 4. The court erred in permitting testimony to be taken on said issue of any other date than the time of trial."

The evidence referred to in the first and second assignments was not objected to on any other ground than that " neither of said dates was the proper time at which to take the values," and it is here insisted that the value should have been determined as of the date indicated in the third assignment, if not at the date of the trial.

In Wood v. Wheeler, 7 Texas, 25, it was held that the valuation in a case in which the exemption to the widow and children of a deceased insolvent debtor was to be determined should be fixed at the date of his decease.

The right of appellee and its measure were fixed at the time of the death of her husband; then the lien held by appellant ceased to be operative to the utmost extent to which the law in force at the time of the contract would permit the homestead to reach. Its measure was property the home of the family, not to exceed in value two thousand dollars at the time; for its protection appellant's lien was in so far destroyed by force of the law with reference to which the lien contract was made.

As the law was at the time the debt due to appellant was contracted no part of the property covered by the trust deed was exempt from sale under the power conferred by that instrument; but the moment the husband died the law withdrew from the trustee all power to sell and from appellant any lien on so much of the property as would be of the value of two thousand dollars, and simultaneously was fixed the right of appellee. The law *then* exempted from any character of sale for the payment of debts and vested in appellee an absolute estate in the homestead, the estate of her husband being insolvent. It is true that as against appellant the

homestead that thus vested could not exceed in value two thousand dollars improved as it was, but this does not affect the fact that the right vested immediately in appellee upon the death of her husband to a thing the extent of which in law could not be left uncertain and dependent upon future contingencies, such as the rise and fall in the value of property. The extent of the property as a fact which then vested in her was necessarily to some extent undetermined, but the law necessarily *then* furnished the basis upon which this could be made certain, for otherwise we would have the anomaly of a right to property conferred by law absolutely, without a measure *then* existing by which its extent could be definitely determined.

Her right to have all the property formerly occupied by herself and husband if it did not exceed in value two thousand dollars was absolutely fixed at the time of his death.

The setting apart of the homestead by the Probate Court was not essential to the vestiture of her right, though for the identification of that which she should take if the homestead exceeded two thousand dollars in value the action of that court might become necessary.　　Sossaman v. Powell, 21 Texas, 666; Reeves v. Petty, 44 Texas, 252.

The rule contended for by appellant would often defeat that right and compel a widow to take something of less value at the time of her husband's death, if perchance before it was ascertained as a fact what particular property she should have the entire property should greatly increase in value.

The right of appellee is just as broad as the facts existing at the time of the death of her husband confer it, and in this the value of the property at the time is a leading factor.

Under the law in force in 1859, when a property used as homestead was not susceptible of division and exceeded two thousand dollars in value, the exemption from forced sale did not exist, and the holder was only protected in the value of a homestead as then limited.

If then a creditor believing the property used as homestead to be of a value greater than two thousand dollars sought to subject it to forced sale that he might have the excess in value, it was his right to have its value ascertained, and the inquiry in such a case would necessarily have to be restricted to the time it was made.

Whether a property used as homestead was exempted by the law as it then was, depended on the fluctuation of value by which an exemption of a given date might be defeated by a subsequent increase in value resulting from improvements or other causes.

To meet this evil the present law was doubtless enacted, under which the value of improvements is not considered and the value of the lot or lots must be determined at the time of their designation as homestead.

The right of a living person under the law in force in 1859 to exemp-

tion of a specific property was not a fixed or permanent right as was under the same law the right of the widow and minor children as against the creditors of a deceased husband.

The court below admitted much evidence as to the value of the property in controversy, looking to dates running from April 22, 1859, to the time of the trial, much of which was offered by appellant, and there was no objection made to it on the ground that it was calculated to confuse or mislead the jury; the sole objection being that neither of the dates named in the first and second assignments of error was the date to which the inquiry should relate.

There was no objection made to the submission of issues made, and there is no reason to believe that the admission of evidence of value of the property on April 22, 1859, could have operated to the prejudice of appellant, and this is especially true in view of the fact that the evidence offered by appellee tended to show that the property was of as great if not greater value at that date than at the date of her husband's death.

Appellant proposed to offer in evidence an assessment list of the city of San Antonio made for the year 1867, which was excluded. It was objected to on the ground that there was no evidence that the list was other than the ex parte statement of the value of the property made by the owner, and because the value of the property in 1867 was an irrelevant inquiry. The correctness of the ruling as a general proposition seems to be conceded by counsel for appellant, but it is insisted that the evidence was admissible because appellee had stated that the improvements had become less valuable from 1859 until a few years before the trial, and the list offered would have tended to show to the contrary.

The relevancy of evidence may sometimes depend upon other evidence offered, but the admissibility of evidence except in so far as this may depend on its relevancy must be determined by the character of the evidence offered.

The assessment list would have been admissible to prove that such an assessment was made, but it was clearly inadmissible for the purpose of proving what the value of the lots or improvements was, and if it had related to the very day on which the husband of appellee died the court would correctly have excluded it.

Appellant also offered to introduce in evidence a list made by the son of appellee, under which the property was assessed for a year subsequent to the death of the husband, which it is insisted should have been admitted to show the value of improvements for the same reason urged in favor of the admission of the assessment before referred to. This evidence was objected to on several grounds, among which were the irrelevancy of evidence of value at a time subsequent to the death of appellee's husband, and further because such a statement made by a third person was not admissible.

To authorize the admission of the declarations of an agent it is necessary that the fact of agency be shown and that the declarations made be in the transaction of the business falling within the powers conferred by the agency, unless the declarations relate to a matter which influenced the action of contracting parties, in which event declarations of the agent on which the other contracting party relied will ordinarily be held as binding on the principal as though made by himself.

In the case before us the court may not have been satisfied from the evidence that the agency of the son existed, nor that he was empowered by his mother to value the property; but however this may be the court did not err in excluding the evidence, which was irrelevant to any issue to be tried and which could not have been introduced for any purpose other than to prove the value of the property in 1869.

That much evidence was introduced without objection to show the value of the property at dates subsequent to the death of the husband furnished no reason for the admission of such evidence when properly objected to.

It is urged that if the true date for valuation is February 21, 1868, the judgment does not find support in the second finding, in that the finding does not expressly declare that the improvements entered into the valuation fixed by the jury. The charge of the court required the jury to state the value of the property, including the improvements, and a general finding of value should be understood to have been made in obedience to the charge; but if otherwise there was uncertainty as to the finding that is removed by the fourth finding, which was "We the jury find from the evidence that said lots 31 and 27 with improvements would not have sold in the market for cash on April 22, 1859, and February 21, 1868, for more than $2000."

It seems that counsel for appellee in the closing argument made reference to former findings by juries in the case, and for this reason it is urged that the court below should have granted a new trial. Such course of argument was not proper, but looking to the evidence in the case there is no reason to believe that it influenced the jury, and this was evidently the opinion of the judge who tried the cause.

This action was commenced nearly twenty years ago, this is its third appearance in this court, and there is, as is conceded, ample evidence to support the verdict, and we do not feel authorized to set it aside on a mere conjecture that the jury may have been influenced by what ought not to have influenced any intelligent juror.

Costs were adjudged against appellant, and he sought in the court below to have the same adjudged against the estate of the deceased, and now insists that this should have been done.

We know no reason why appellant should not be charged with the costs of this litigation as are other losing litigants.

He made this contest, and the statute very justly provides that "in all cases where a party shall file any application, complaint, or opposition in the court under the provisions of this title, and on the trial thereof he shall be defeated, or fail in the object for which his application, complaint, or opposition was filed, all costs occasioned by the filing of the same shall be adjudged against him." Rev. Stats., art. 2198.

This contest was one such as was contemplated by the statute. Rev. Stats., art. 1818. Appellant's right to make it has been recognized, and he is properly charged with the costs adjudged against him.

There is no error in the judgment, and it will be affirmed.

*Affirmed.*

Delivered May 10, 1889.

Motion for rehearing overruled.

*Terrell & Walker*, for motion.

*Denman & Franklin*, resisting.