RHODES et al. v. PANHANDLE & S. F. RY. CO. (No. 1871.) *

(Court of Civil Appeals of Texas. Amarillo. March 8, 1922. Rehearing Denied June 28, 1922.)

1. Evidence ⊜⟳155(6)—Evidence that automobilist could have seen approaching train held admissible.

Where, in answer to an interrogatory by plaintiff, witnesses testified that an automobile could have been seen from the train approaching a crossing for a mile or so, the admission of evidence on cross-examination that the occupants of the automobile could likewise have seen the approaching train by turning their heads to the right was not error.

2. Railroads ⊜⟳345(3)—Evidence of absence of danger signals held inadmissible under pleading.

The exclusion of testimony that there were no danger signals in addition to the regular crossing sign posted on approach of a road to a railroad crossing not having been pleaded as an act of negligence was not error.

3. Appeal and error ⊜⟳1052(5)—Error in exclusion of evidence cured by verdict.

Error in excluding evidence on issue of decedent's negligence is immaterial where jury finds that defendant is not negligent.

4. Appeal and error ⊜⟳1050(2)—Admission of immaterial evidence held harmless.

Evidence that an engineer, given in the course of his explanation as to the view he had of the track and objects near at hand on the fireman's side of the engine, had struck an automobile, under similar circumstances once before, while not relevant nor material to an action against the railroad for injuries, held, that its admission was harmless error.

5. Railroads ⊜⟳347(9)—Evidence as to lookout held admissible.

Evidence that a fireman or an engineer would not last very long if, when he is not firing the coal or at the throttle running the engine, he would be engaged in looking for automobiles on the road, and if in running the train he would try to keep a lookout for automobiles on the road he would not stay there very long, because it is not his duty, and there would be more accidents, held admissible.

6. Appeal and error ⊜⟳1170(6)—Mere showing that improper argument was made not sufficient for reversal, unless it influenced jury to appellant's injury.

Under rule 62a, for Court of Civil Appeals (149 S. W. x) the mere showing that an improper character of argument was made does not alone authorize a reversal of the case, but it must further appear that such argument

probably influenced the jury to the prejudice of the appellant.

7. Appeal and error ⊜⟳1070(2)—Erroneous finding not reversible where other finding sufficient to support verdict.

It was not reversible error to refuse to set aside the special finding that decedents' negligence was the proximate cause of the injury, where sustained by the evidence, in view of the finding that defendant railroad was not guilty of negligence which would in any event entitle it to judgment.

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

Action by Bertha Rhodes and others against the Panhandle & Santa Fé Railway Company. From a judgment for defendant, plaintiffs appeal. Affirmed.

Barrett, Works & Deatherage, of Amarillo, for appellants.

Madden, Trulove, Ryburn & Pipkin, of Amarillo, for appellee.

BOYCE, J. Bertha Rhodes, joined by her husband, brought this suit in behalf of herself and other children of John and Alice Wallace, against the Panhandle & Santa Fé Railway Company, to recover damages for the death of the said John and Alice Wallace. The plaintiffs, alleged that the defendant's train struck and killed the decedents while they were crossing the railway tracks at a public road crossing, near Kress, Tex. Three specific charges of negligence against the defendant were made by the plaintiffs and submitted by the court to the jury, as we shall presently state. The defendant denied the. acts of negligence charged against it, and specially pleaded that the accident was the result of the negligence of the decedents. The jury found in answer to special issues: (1) That the whistle was blown and the bell rung for the crossing, as required by law; (2) that the train operatives did not discover the peril of the decedents in time, by the exercise of ordinary care, to have avoided the injury; (3) that the said operatives were not guilty of negligence in failing to discover the peril of the decedents in time to have avoided the collision; (4) that the decedents were guilty of negligence, the sole proximate cause of the collision and their injury and death.

It appears from the evidence that defendant's passenger train, running north at a speed of about 45 miles per hour, struck an automobile, of which the said John and Alice Wallace were the only occupants, at a public road crossing, 3 miles north of the station of Kress, and killed the said persons. The train was about 30 minutes behind its schedule time at, this place. The evidence is. conflicting as to whether the whistle and bell were sounded for the crossing. The fire-

---

man on the engine testified that he had just finished shoveling coal into the firebox and as he raised up saw the automobile on the track the instant before it was struck. The engineer testified that he was looking down the track; that the automobile came on to the track from the side opposite to his position in the engine and he did not see it until it crossed over on to the right side of the track in front of the engine at the same moment that it was hit. The automobile driven by the decedents approached the crossing on a public road coming in from a southerly direction and to the west of the railway tracks. This road south of the crossing ran in a direction of some 15 or 20 degrees divergence from that of the track, to a point within about 75 or 100 feet from the crossing, from which place it paralleled the tracks along the outer line of the right of way for a short distance and then turned to make the crossing. The surrounding country was level and there were no obstructions to the view for several miles to the south of the crossing, except that there was a line of telephone poles on the right of way to the west of the tracks, which might obstruct the view between relative points on the track and on the road after it began to parallel the tracks. Witnesses, whom decedents passed about one-half mile south of the crossing, testified that the decedents were at such time driving about 25 miles per hour and that the curtains of the car were up. The evidence as to the curtains, however, is conflicting. Mrs. Wallace was killed instantly; John Wallace was conscious when he was reached after the accident and his first words are reported to have been, "What hit me"? He died within a day or two, as a result of the injuries received.

[1] Complaint is made as to the admission of the testimony of four witnesses, S. T. and J. O. Sawyer, Edith Beverly, and Jack Roberson, who are recited in the bill of exceptions to the admission of the evidence to have testified, over objection, that the "occupants of said automobile (the decedents) could have seen the train coming and avoided the injury by merely turning their heads to the right and looking." This statement in the bill, reproduced in the assignment, is not entirely in accord with the evidence as it appears in the statement of facts. It appears from the statement of facts that the plaintiffs offered the deposition testimony of these witnesses, who testified on direct examination that the country surrounding the crossing was level and that an automobile could have been seen from the train approaching the crossing for a mile or so, before reaching the crossing. The testimony objected to was in answer to the cross-interrogatories and all of the witnesses in answer to one interrogatory testified, in substance, that the occupants of the automobile could have seen the approaching train by merely turning their heads to the right. Two of them testified further, in answer we take it to a different interrogatory, that the occupants of the car could have avoided the accident if they had merely taken the precaution to look toward the railroad track as they approached the crossing, and two of the witnesses testified that they did not know whether the occupants of the car could have thus avoided the accident. We do not think there was any error in the admission of the evidence to the effect that the occupants of the car could have seen the train by turning their heads to the right. This is such a statement of fact as to be admissible. Besides, plaintiffs had offered testimony with reference to the view from the train, and the defendant was entitled to offer such evidence as to a similar view from the automobile. The further evidence given by the two witnesses as referred to involved an opinion and conclusion as to matters which the jury were to decide, and we think was inadmissible. It appears from the bill of exceptions that one objection was made to the entire testimony. If any part of it was admissible there was no error in overruling the objection. But, in any event, the error does not require a reversal of this case because the evidence was material only on the issue of the decedents' negligence and the finding of the jury on the issues of the negligence of the railway company entitled the defendant to a judgment, so that the issue of the decedents' negligence became immaterial.

[2, 3] There was no error in refusing the admission of testimony that there were no danger signals, in addition to the regular crossing sign, posted on approach of the road to the crossing. Such fact was not pleaded as an act of negligence. Appellant only contends that it was admissible on the issue of decedents' negligence, and, even if it were admissible on such issue, it became immaterial in view of the jury's finding that the railway company was not negligent.

[4] The fact that the engineer had, while running an engine once before, struck an automobile under similar circumstances, was not relevant or material. The evidence was given in the course of an explanation by the engineer as to the view he has of the track and objects near at hand on the left side of the engine, the engineer's place being on the right side, and we do not see how its admission could have been harmful to appellants.

[5] The fourth and fifth assignments complain of the admission of certain testimony by the fireman of the engine. The following statement is made as being necessary to an understanding of the testimony given and the tenability of the objection made to its introduction. The witness, on cross-examination by the plaintiffs, had testified as to the

arrangement of the engine cab. That there were front lookout windows on each side, which permitted the engineer and fireman to look down the track, "looking down the side of the engine or boiler." That "he always looked down the track when he was not busy." That the head of the boiler is about 25 feet from the seats of the fireman and engineer, so that objects from 25 to 30 feet in front of the engine cannot be seen from such seats. That the view from the front windows would extend from 150 to 200 yards to each side of the track, at a distance of 80 rods in front of the engine, with a wider view at greater distances and a narrower view at closer range.

"You can see some distance to the left of the train from the engineer's seat whenever you look far enough ahead."

That there are side windows in the cab, about two feet wide.

"The engineer don't glance through the windows on my side of the cab, but it he had at the right time he might have seen an automobile out there 150 yards when it passed the whistling post.

On redirect examination by the railway company the witness testified:

"The fireman is required to keep a lookout on the track ahead when not otherwise engaged with his duties. The fireman is not required to look out to the sides of the road to know if vehicles are going along the road. In looking ahead of you you see just so much as is ahead of you on either side as your vision will take in and that is the kind of lookout I was keeping when not firing the engine. * * * [And then proceeded, over objection, to testify.] A fireman or engineer would not last very long if, when he is not firing the coal or not at the throttle running the engine, he would be engaged watching for automobiles on the road. If the engineer and fireman in running the train, tried to keep a lookout for automobiles on the roads and sides they would not have much luck—would not stay there very long because it is not their duties and there would be more accidents occur."

We do not think there was any error in admitting this testimony. When considered in connection with the other evidence given by the witness, it is apparent that the witness meant to say that the engineer and fireman could not look out of the side windows for automobiles and vehicles that might be off to the sides of the train, but had to confine their watch to the front and observe what thus came within the range of such vision. It is the law, of course, that the train operatives must keep a reasonable lookout for persons, vehicles, etc., on or near the track. But naturally, the opportunity for observation from a rapidly moving train is limited, and we think the testimony of an operator, who has had experience in such matters, is admissible for the purpose of determining what character of lookout is practical under the circumstances, and the jury had the right to consider such evidence in determining whether a reasonable lookout was kept.

[6] The plaintiffs introduced the deposition evidence of M. M. Bagley and Charity Stockston, who testified as to the speed of the train, the speed of decedents' automobile about one-half mile from the crossing, and that they (the witnesses) were about one-fourth mile from the crossing when the accident occurred, and did not hear the train whistle or ring the bell for the crossing. Appellants complain of the refusal of the trial court to charge the jury, at their request, not to "consider either the arguments of defendant's attorneys in regard to the manner and form, as well as the time of the return of the depositions of M. M. Bagley and Charity Stockston." The trial court refused the instruction, stating in a memorandum attached thereto that the same was presented to the court immediately after "one of the attorneys for defendant had based an argument on the manner and form of the taking and time of returning of said depositions into court, said argument having been made over the oral objections of attorneys for plaintiffs," and that due exceptions were taken to the action of the court in such matter. The foregoing is the only information in the record as to what the argument was. The evidence merely appears in the statement of facts as having been taken on a certain date before a named notary public. We have no doubt that some arguments as to the manner and form of taking and time of return of depositions which might tend to impeach the credibility of the evidence thus given should not be permitted. Blum v. Jones, 86 Tex. 492, 25 S. W. 695. There might possibly be some matters as to the manner and form of taking the depositions that could be properly argued in discussing the evidence, for instance, the character of the questions and of the answers and perhaps the similarity of the language of the answers to the same question given by different witnesses, and the like. However this may be, without knowing what the argument was, we cannot know whether any error in permitting it to be made "amounted to such a denial of the rights of the appellant as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case." Rule 62a for Courts of Civil Appeals (149 S. W. x). The mere showing that an improper character of argument was made does not alone authorize a reversal of the case. It must further appear that such argument probably influenced the jury to the prejudice of the appellant. McLane v. Paschal, 74 Tex. 20, 11 S. W. 837; G. H. & S. A. Ry. Co. v. Croskell, 6 Tex. Civ. App. 160, 25 S. W. 490 (10).

[7] The seventh assignment complains of the refusal of the trial court to set aside

the finding of the jury that the decedents' negligence was the proximate cause of the injury. This finding of the jury was sustained by the evidence, but, as we have already stated, the finding that the defendant was not guilty of negligence would, in any event, have entitled it to a judgment.

The court, in the seventh paragraph of the charge, fully instructed the jury as to the burden of proof as to negligence of the railway company and the decedents, and there was no error in the refusal of the special instruction referred to in the eighth assignment.

No error has been assigned which we think requires a reversal of the case, and it will be affirmed.

