# Supreme Court of Texas

No. 22-0674

In the Matter of Trust A and Trust C. Established Under the
Bernard L. and Jeannette Fenenbock Living Trust Agreement,
Dated March 12, 2008

On Petition for Review from the
Court of Appeals for the Eighth District of Texas

**Argued February 1, 2024**

JUSTICE BOYD delivered the opinion of the Court.

A probate court found that a trustee breached her duties by transferring property from the trust to herself. Based on that finding, the court ordered that the property "be restored" to the trust. But the trustee had previously sold the property to persons who were not parties to the suit. The court of appeals vacated the probate court's order, concluding that the buyers were "jurisdictionally indispensable parties" whose absence deprived the probate court of jurisdiction. We hold that the probate court had jurisdiction but erred by ordering the trustee to restore property she no longer owns or controls. We therefore reverse the court of appeals' judgment vacating the probate court's order,

reverse the probate court's order, and remand to the probate court for further proceedings.

## I.
## Background

Bill Silver started W. Silver Recycling, Inc. as an El Paso scrap yard in the early twentieth century, and it has remained family-owned and -operated ever since. The family members relevant to this case begin with Bill's daughter, Jeannette, who married Bernard Fenenbock. Jeannette and Bernard had two children, Glenna Fenenbock Gaddy and Mark Fenenbock, who are the parties in this case. Glenna and Mark each also had two children, all of whom are now adults: Glenna's sons Weston and Lane and Mark's daughters Elysa and Lauren. For clarity, we will refer to everyone by their first names.

After marrying Jeannette, Bernard succeeded Bill as W. Silver Recycling's manager. Bernard and Jeannette accumulated substantial wealth during their lifetimes. In 2008, they placed their assets in a Living Trust to benefit themselves and their descendants. The trust agreement created three Sub-Trusts (Trust A, Trust B, and Trust C), which would become effective and receive the Living Trust's assets upon Bernard's death. It also established a trust to benefit Glenna and another trust to benefit Mark. After describing certain specific gifts, the trust agreement provided that the remainder of the assets must be distributed equally from the Sub-Trusts to Glenna's Trust and Mark's Trust.

The agreement named trustees to manage the various trusts. It appointed Bernard and Jeannette as the initial co-trustees of the Living

2

Trust and provided that if Bernard died or otherwise ceased to act as a trustee before Jeannette, then Glenna would replace him and act as a co-trustee of the Sub-Trusts with her mother, Jeannette.[1] And when both Bernard and Jeannette ceased to serve, the agreement appointed Mark to serve as a co-trustee with his sister, Glenna. In addition, the agreement appointed Glenna and Mark to each serve as the sole trustee of their own trusts.

Bernard died in 2012, and—consistent with the agreement's instructions—Glenna began serving as co-trustee with her mother Jeannette. At the same time, Glenna's son, Lane, succeeded Bernard as W. Silver Recycling's manager and has continued to manage the company since then. Over the last several years, clashes between Glenna and Mark and their children have resulted in multiple legal disputes.[2] Jeannette was particularly "distressed and saddened" when Mark's daughters, Elysa and Lauren, sued W. Silver Recycling in 2014.

---

[1] The agreement originally provided that if Jeannette ceased to act first, Bernard would serve as sole trustee. They later amended the agreement to provide that Glenna would serve as a co-trustee with Bernard if Jeannette ceased to serve first. These provisions became irrelevant when Bernard predeceased Jeannette.

[2] *See generally Gaddy v. Fenenbock*, 652 S.W.3d 860, 873–74 (Tex. App.—El Paso 2022, no pet.) (reversing order denying special appearance); *In re Fenenbock*, 621 S.W.3d 724, 738 (Tex. App.—El Paso 2020, orig. proceeding) (granting mandamus to disqualify party's counsel); *Fenenbock v. W. Silver Recycling, Inc.*, 601 S.W.3d 32, 46 (Tex. App.—El Paso 2020, no pet.) (affirming judgment on stock-valuation and fraud claims); *Fenenbock v. W. Silver Recycling, Inc.*, No. 08-17-00180-CV, 2017 WL 4534332, at *1 (Tex. App.—El Paso Oct. 11, 2017, no pet.) (mem. op.) (dismissing appeal); *Fenenbock v. W. Silver Recycling, Inc.*, No. 08-16-00308-CV, 2017 WL 1496968, at *1 (Tex. App.—El Paso Apr. 26, 2017, no pet.) (mem. op.) (dismissing interlocutory appeal).

Whether for that reason or others, Jeannette amended the trust agreement in 2015 to change the distribution instructions.

As amended, the trust agreement instructs that the shares the Sub-Trusts held in W. Silver Recycling must be distributed only to Glenna's Trust, but "assets of an equivalent value" must be "allocated to" Mark's Trust. At the same time, Jeannette executed a will that included the same instructions. In short, Jeannette instructed that Glenna's Trust and Mark's Trust must still receive equivalent values of the Sub-Trusts' assets, but only Glenna's Trust would receive the shares in W. Silver Recycling.

Jeannette died in 2016, and her will designated Glenna as the sole executor of her estate. Acting in that capacity, Glenna hired an appraiser to value the assets. The appraiser valued the shares the Sub-Trusts held in W. Silver Recycling at $3,450,000. Glenna apparently believed she also became the sole trustee of the Sub-Trusts. Acting in that capacity, she transferred the shares from the Sub-Trusts to her own trust, consistent with the instructions in the amended trust agreement and her mother's will. After the transfer, the Sub-Trusts retained assets exceeding $9 million. That same day, acting in her capacity as sole trustee of her own trust, Glenna sold the shares in equal amounts to her two sons, Weston and Lane. In exchange, each son provided a promissory note for $1,725,000, consistent with the shares' appraised value. Three days later, W. Silver Recycling paid $6 million in dividend distributions to its shareholders—Glenna, Weston, and Lane.

When Mark learned of these events, he filed this suit against Glenna, seeking declaratory relief, damages, and injunctive relief. In short, he asserted that Glenna's transfer of the shares from the Sub-Trusts to Glenna's Trust was void because Mark had become a co-trustee of the Sub-Trusts upon their mother's death and he had not approved the valuation or the transfer. Although Mark did not dispute that the trust agreement and Jeannette's will required that the shares be transferred to Glenna's Trust, he argued that, as a co-trustee, he was entitled to an equal say on the valuation of the shares and the timing of the transfer.

Mark alleges that, by cutting him out of the process, Glenna prevented him from ensuring that the shares were properly valued and deprived him of the portion of the $6 million in dividends he would have received from the Sub-Trusts had the dividends been paid before Glenna transferred the shares to her trust. He requested that the probate court declare that he had become a co-trustee, that his approval of the valuation and transfer to Glenna's Trust was required, and that the transfer was void, and order that the shares be returned to the Sub-Trusts. Although Weston and Lane had already purchased the shares from Glenna's Trust, Mark did not name them as defendants.

Mark and Glenna filed competing motions for partial summary judgment on the issue of whether Mark is a co-trustee of the Sub-Trusts. The probate court denied Glenna's motion and granted Mark's, declaring that Mark is a co-trustee and has been since their mother's death. Glenna did not appeal that ruling and now concedes, at least for

5

purposes of this appeal, that she should have included Mark in the valuation and transfer process.

Mark then filed a motion asking the probate court to declare the transfer of the shares to Glenna's Trust void, to impose a constructive trust on the shares, and to order that the shares be returned to the Sub-Trusts, along with any dividends received after the transfer. Glenna objected, arguing, among other things, that the motion "seeks to divest non-parties (a.k.a.—Lane Gaddy and Weston Gaddy) of property which belongs to them," and urged the probate court to abate the motion "pending Mark's joinder" of Lane and Weston "as necessary parties to this proceeding." Glenna also argued that the transfer should not be declared void because, as Mark concedes, the trust agreement and Jeannette's will required the shares to be transferred to Glenna's Trust.

The probate court orally granted Mark's motion and proposed a written order declaring that Glenna lacked authority to act alone and that the transfer to Glenna's Trust was null and void ab initio, imposing a constructive trust on the shares, ordering that the shares "be restored to" the Sub-Trusts, requiring Glenna to "also deposit" into the court's registry "an equivalent value of any dividends" that had been paid on the shares since the transfer, ordering the co-trustees to agree on a new valuation process, and ordering Glenna to provide an accounting to the trust beneficiaries. Glenna objected to the proposed order on several grounds, including that Mark "fail[ed] to join indispensable parties," that the order failed to identify who was required to restore the shares to the Sub-Trusts, and that she could not comply with the order because she no longer owned or controlled the shares.

6

The probate court entered the order over Glenna's objections, and Glenna appealed. The court of appeals vacated the order and remanded the case to the probate court, holding sua sponte that the probate court lacked jurisdiction to declare the transfer void because Weston and Lane were "jurisdictionally indispensable" parties. 651 S.W.3d 588, 601 (Tex. App.—El Paso 2022). The court suggested Glenna may have failed to preserve the issue because the probate court never expressly ruled on Glenna's objections to the proposed order and Glenna did not raise "an indispensable party argument as it pertains to jurisdiction" in her appellate brief. *Id.* at 596. But the court concluded the probate court's failure to require that Weston and Lane be joined as parties was a "fundamental error" that Glenna need not have preserved. *Id.*

Glenna and Mark both filed petitions for review, which we granted. Mark asserts in his petition that Weston and Lane's absence as parties did not deprive the probate court of jurisdiction, that Glenna failed to preserve any complaint about their absence, and that the fundamental-error doctrine does not apply. In addition, he contends the transfer was void and that the probate court could impose a constructive trust on the shares and order that they be restored to the Sub-Trusts regardless of whether Weston and Lane were named as parties.

Glenna agrees with Mark that the court of appeals erred by holding that Weston and Lane's absence deprived the probate court of jurisdiction. But she argues that the probate court erred by imposing a constructive trust because no evidence supports a finding that she committed a breach of trust. In addition, she contends the court erred by ordering that the shares "be restored" to the Sub-Trusts because she

7

no longer owns the shares and cannot possibly comply with that order. And because Mark concedes that the trust agreement and Jeannette's will required that the shares be transferred to her trust, she contends that no basis exists for ordering them to be transferred back to the Sub-Trusts.

## II.
## Probate Court's Jurisdiction

We begin with the court of appeals' holding that Weston and Lane were "jurisdictionally indispensable" parties. *See id.* at 601. Like Mark and Glenna, we disagree. Texas Rule of Civil Procedure 39 provides that a person who is subject to service of process shall be joined in an action if (1) the court cannot grant "complete relief" to the parties in the person's absence or (2) the person "claims an interest relating to the subject of the action" and a judgment may impair his ability to protect his interest or leave the parties subject to a "substantial risk of incurring" multiple or inconsistent obligations. TEX. R. CIV. P. 39(a). If either situation exists, but the person cannot be joined, the trial court must decide whether to proceed without him or dismiss the action. *Id.* 39(b).

Under Rule 39, however, the parties' failure to join a person will rarely deprive the court of jurisdiction. *See In re Kappmeyer*, 668 S.W.3d 651, 655–58 (Tex. 2023). Instead, Rule 39 addresses whether the court has "authority" to proceed in the person's absence. *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 162 (Tex. 2004). But the rule was designed "to avoid questions of jurisdiction," and it "would be rare indeed if there were a person whose presence was so indispensable in the sense that his absence deprives the court of jurisdiction to adjudicate between the

8

parties already joined." *Cooper v. Tex. Gulf Indus., Inc.*, 513 S.W.2d 200, 203–04 (Tex. 1974).

This is not such a "rare" case. No one disputes that the probate court had jurisdiction to resolve the dispute between Glenna and Mark. Assuming Weston and Lane should have been joined under Rule 39(a), it was incumbent on the probate court to decide whether to dismiss the case or proceed without them, as it in fact decided to do. As discussed below, Weston and Lane's absence may have limited the relief the court could grant, but it did not deprive the court of jurisdiction to resolve the case before it. We will therefore reverse the court of appeals' judgment vacating the probate court's order for lack of jurisdiction.

## III.
## Remaining Issues

Having concluded that the probate court had jurisdiction, we could simply remand the case to the court of appeals so that it can address the parties' remaining issues. Glenna and Mark urge us to address those issues here, however, to help expedite the final resolution of their dispute. Although we cannot now resolve all their issues, we will address those we can.

### A.    Breach of Trust

Glenna argues that the probate court erred by voiding the transfer of the shares and imposing a constructive trust because no evidence supports a finding that she committed a "breach of trust." *See* TEX. PROP. CODE § 114.008(a)(9) ("To remedy a breach of trust . . . , the court may . . . void an act of the trustee [or] impose a lien or a constructive trust on trust property . . . ."). A "breach of trust" means a trustee's violation of a duty owed "to a beneficiary." *Id.* § 111.004(25).

9

Because the amended trust agreement and Jeannette's will granted Mark no interest in the shares and instead required that they be transferred to Glenna's Trust, she contends the transfer could not have breached any duty she owed to Mark "as a beneficiary."

By acting without involving Mark in the process, however, Glenna acted as a sole trustee when she was actually a co-trustee. The trust agreement expressly provides that "[i]n any instance in which two Co-Trustees are serving jointly, any action of the Trustee shall require the joinder and consent of both Co-Trustees." Glenna thus breached her duties by acting unilaterally with regard to the valuation and transfer of the shares. Mark asserts that the valuation reduced the "equivalent value" of other assets that must be allocated to Mark's Trust, and the timing of the transfer prevented the Sub-Trusts from receiving the dividend payments and thus reduced the trust assets available for distribution to Mark's Trust after the transfer. If either of these allegations is true, Glenna's unauthorized actions could constitute a "breach of trust" because Mark's Trust is a beneficiary entitled to receive an equal share of those assets. Based on these facts, we cannot agree with Glenna's contention that, as a matter of law, Glenna did not commit a breach of trust.

## B.    Restoration of the Shares

Glenna argues that, even if she committed a breach of trust, the probate court erred by ordering that the shares "be restored" to the Sub-Trusts. She contends such injunctive relief is improper because the order does not identify *who* must "restore" the shares. To the extent the order is intended to require *her* to restore the shares, she contends the order is improper because she sold the shares to Weston and Lane and

10

thus no longer owns or controls them. And in any event, she contends the order to restore the shares was improper because—as Mark concedes—the trust agreement and Jeannette's will required that they be transferred to Glenna's Trust.

Mark asserts that Glenna cannot complain on appeal that Weston and Lane were not named as parties because Glenna did not preserve that complaint by filing a verified plea to abate the case. *See Allison v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 703 S.W.2d 637, 638 (Tex. 1986) (per curiam) ("A proper challenge to a defect of parties is by way of a verified plea." (citing TEX. R. CIV. P. 93(4))); *Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex. 1982) ("The defendants should not be heard to complain for the first time on appeal, however, because they did not complain at the trial level by exception, plea in abatement, motion to join other parties or otherwise."). Because Weston and Lane's absence did not deprive the court of jurisdiction, Mark contends that any failure to join them did not constitute fundamental error, and Glenna thus "waive[d] any right to complain about the matter on appeal." *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996).

We need not decide whether Glenna failed to preserve the argument that Weston and Lane were indispensable parties. Glenna also argued in the probate court—and continues to argue here—that the court erred by ordering that the shares be restored to the Sub-Trusts because she, as the only named defendant, does not own or have any

11

control over the shares.[3] We agree that the relief was improper for that reason. "[C]oercive relief" is improper when it "becomes impossible." *State ex rel. McKie v. Bullock*, 491 S.W.2d 659, 660 (Tex. 1973).[4] Because Weston and Lane were not parties to the suit, the probate court could not require them to transfer the shares back to Glenna's Trust or to the Sub-Trusts. *See Brooks*, 141 S.W.3d at 163.[5] But their absence did not

---

[3] Citing *Pirtle*, 629 S.W.2d at 919, Mark contends that Glenna's complaint that she cannot comply with the restoration order is no different than her complaint that Mark failed to join Weston and Lane, who could comply with the order. We disagree. The plaintiff in *Pirtle* sued for specific performance to require the defendants to comply with their contractual promise to lease mineral rights to the plaintiff, even though they had already granted a lease to other persons who were not parties. *Id.* The defendants still owned the minerals and thus could comply with the court's order by leasing them to the plaintiff, although doing so would put them in breach of their lease to the third parties. Their only available complaint was that the third parties were indispensable in light of the relief granted. Glenna, by contrast, can argue (and has argued) that—regardless of whether Weston and Lane are named as parties—any order requiring *her* to restore the shares is improper because she no longer owns or controls them.

[4] *See also Speer v. Presbyterian Child.'s Home & Serv. Agency*, 847 S.W.2d 227, 229 (Tex. 1993) (holding declaratory and injunctive relief would be improper and the appeal had become moot because defendant could no longer possibly perform the act plaintiff sued for); *Hulett v. W. Lamar Rural High Sch. Dist.*, 232 S.W.2d 669, 670 (Tex. 1950) ("It is apparent that under the facts made known to us it is no longer possible for the petitioners to be granted injunctive relief. If this is the only form of relief to which they would be entitled in any event, then it is clear that the case is moot."). Similarly, we have recognized that it is improper to hold a party in contempt for failure to comply with an order the party could not possibly comply with. *See Ex parte Helms*, 259 S.W.2d 184, 186 (Tex. 1953); *Ex parte Mabry*, 52 S.W.2d 73, 74 (Tex. 1932).

[5] *See also* TEX. CIV. PRAC. & REM. CODE § 37.006(a) ("[A] declaration does not prejudice the rights of a person not a party to the proceeding."); TEX. R. CIV. P. 683 ("Every order granting an injunction . . . is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys,

empower the probate court to order Glenna to perform an act she has no power or ability to perform.

If Glenna had not sold the shares and her trust still owned them, the Property Code would allow Mark to choose between a damages award or an order requiring Glenna to restore the shares to the Sub-Trusts. *See* TEX. PROP. CODE § 114.008(a)(3) (allowing a court to "compel[] the trustee to pay money or to restore property"); *Slay v. Burnett Tr.*, 187 S.W.2d 377, 393 (Tex. 1945) ("The right of election is given to the beneficiary, he being permitted to choose the remedy which is more advantageous to him."). But because Glenna sold the shares to Weston and Lane, Mark's only available relief against Glenna is a money judgment ordering her to pay the proceeds of that sale or the value of the shares. *See* 72 TEX. JUR. 3D TRUSTS § 202 ("[I]f property has been wrongfully sold by the trustee, the beneficiary has the option of either suing for the proceeds or for the value of the property converted.")

Mark argues, however, that the injunctive relief was proper because the probate court imposed a constructive trust on the shares and the proceeding was, in effect, an in rem action affecting the shares without regard to who may own or claim an interest in them. He notes that the Texas Trust Code permits a court that finds a breach of trust to "void an act of the trustee," "impose a lien or constructive trust on trust property," and compel a trustee to "restore property" to the trust. TEX. PROP. CODE § 114.008(a)(3), (9). Again, we disagree.

---

and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.").

"A constructive trust is an equitable, court-created remedy designed to prevent unjust enrichment." *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015) (citing *Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex. 1974)). Courts may impose a constructive trust if "*the person holding the title to property* would profit by a wrong or would be unjustly enriched if he were permitted to keep the property." *Omohundro v. Matthews*, 341 S.W.2d 401, 405 (Tex. 1960) (emphasis added) (citing RESTATEMENT (FIRST) OF RESTITUTION §§ 160, 194 (AM. L. INST. 1937); RESTATEMENT (FIRST) OF TRUSTS §§ 44, 45 (AM. L. INST. 1935)). A court may impose a constructive trust only when "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property *in the defendant's possession*." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (emphasis added). "A claimant who can show unjust enrichment, but who cannot identify such property in the hands of the defendant, is not entitled to the remedy of constructive trust." RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 55 cmt. g (AM. L. INST. 2011). Because Glenna no longer owns or controls the shares, Mark cannot obtain a constructive trust that requires Glenna to restore them. *See Knudson*, 534 U.S. at 213–14.

No one here disputes that Glenna disposed of the W. Silver Recycling shares by transferring them from the Sub-Trusts to her trust and then selling them to Weston and Lane. If Weston and Lane were named as parties in this action, the probate court could potentially impose a constructive trust and compel *them* to restore the shares to Glenna's Trust or to the Living Trust, subject to whatever defenses they

14

may raise.[6] Alternatively, the court could potentially impose a constructive trust on any traceable proceeds Glenna or her trust received from the sale to Weston and Lane. *See KCM Fin.*, 457 S.W.3d at 88 ("A resultant constructive trust may be placed on the property wrongfully taken or the proceeds or revenues generated from the property." (citing *Wheeler v. Blacklands Prod. Credit Ass'n*, 627 S.W.2d 846, 851 (Tex. App.—Fort Worth 1982, no writ))). Or the court could impose personal liability against Glenna and her trust for money damages resulting from the wrongful transfers. *See* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 60(3) (AM. L. INST. 2011) ("A claimant who is entitled to restitution but who is unable to identify specific property from which restitution is available has a remedy via money judgment that ranks equally with the claims of general creditors."). But it cannot impose a constructive trust requiring Glenna to restore the shares to the Sub-Trusts when she no longer owns

---

[6] Glenna suggests, for example, that the probate court could not order Weston and Lane to restore the shares even if they were named as parties because they are bona fide purchasers. *See* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT §§ 55 (AM. L. INST. 2011) ("A valid claim to restitution from property may be asserted against transferees of the property (and its traceable product) until the property comes into the hands of a bona fide purchaser or payee."), 66 ("A purchaser for value and without notice acquires the legal interest that the grantor holds and purports to convey, free of equitable interests that a restitution claimant might have asserted against the property in the hands of the grantor."). Mark argues this defense is unavailable because, among other things, the original transfer was void from its inception. We neither resolve nor address these arguments at this point, other than to note that they would be relevant only if Weston and Lane were made parties to the action on remand. As it stands now, however, neither Glenna nor Mark appears to have any interest in naming Weston and Lane as parties.

or controls those shares. *See, e.g.*, *McLeod v. McLeod*, 644 S.W.3d 792, 812–13 (Tex. App.—Eastland 2022, no pet.); *Baker Botts, L.L.P. v. Cailloux*, 224 S.W.3d 723, 737 (Tex. App.—San Antonio 2007, pet. denied).

Glenna insists that an order requiring the shares to be restored to the Sub-Trusts would never be appropriate here, even if Weston and Lane were made parties, because everyone agrees the trust agreement and Jeannette's will required that the shares be transferred to Glenna's Trust. Undoing the transfers at this point, she contends, would not only be unnecessary, it would harm both parties by causing the trusts to incur additional tax liabilities and penalties and by jeopardizing recent bank loans to W. Silver Recycling. We agree with this argument. "Even if the claimant has conferred a benefit that results in the unjust enrichment of the recipient when viewed in isolation, the recipient may defend by showing that some or all of the benefit conferred did not unjustly enrich the recipient when the challenged transaction is viewed in the context of the parties' further obligations to each other." RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 62 (AM. L. INST. 2011). As a co-trustee, Mark owes a fiduciary duty not just to himself and his trust but to all beneficiaries, including Glenna's Trust. *See Slay*, 187 S.W.2d at 388. And given the clear instructions in the amended trust agreement and Jeannette's will, Mark has a nondiscretionary duty to ensure that the shares are transferred to Glenna's Trust. *See* TEX. PROP. CODE § 113.051. Based on the arguments made thus far in this case, we see no reason why the probate court should or could require the shares to be transferred back to the

16

Sub-Trusts when the trust agreement required that they be transferred to Glenna's Trust and gave Glenna the sole authority over them from that point.

Mark insists, however, that undoing the transfer of the shares is essential to any adequate relief because it is necessary to ensure that he can participate in the process of determining the shares' value. We agree that Mark must be permitted to participate in the valuation process, but we do not agree that the shares must be restored to the Sub-Trusts to make that happen. On remand, Mark may attempt to prove that the value of the shares on the date of Jeannette's death[7] was greater than the valuation Glenna unilaterally accepted. If he meets that burden, the total value of the Sub-Trusts' assets, and thus his trust's proportional "equivalent" share of those assets, will increase over the values fixed by the $3,450,000 value Glenna unilaterally accepted. *Cf.* RESTATEMENT (SECOND) OF TRUSTS § 205 cmt. d (AM. L. INST. 1959) ("If the trustee is authorized to sell trust property, but in breach of trust he sells it for less than he should receive, he is liable for the value of the property at the time of the sale less the amount which he received.").

---

[7] *See Calvert v. Coke*, 458 S.W.2d 913, 916 (Tex. 1970) ("In the usual situation where the beneficiary takes by will or under the laws of descent and distribution, the taxable event is the 'passing' that occurs at the death of the testator or intestate."); *see also State v. Wiess*, 171 S.W.2d 848, 851 (Tex. 1943) ("The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated . . . [t]o the extent of the interest therein of the decedent at the time of his death . . . ." (quoting Revenue Act of 1926, ch. 27, § 302, 44 Stat. 9, 70 (current version at 26 U.S.C. § 2031(a)))); *McLane v. Paschal*, 11 S.W. 837, 838 (Tex. 1889) ("The right of appellee, and its measure, were fixed at the time of the death of her husband.").

Mark also contends, however, that the shares must be restored to the Sub-Trusts so that the Sub-Trusts will receive their proportionate share of the $6 million in dividends W. Silver Recycling distributed after the shares were transferred to Glenna's Trust. This presents a more complicated argument. On the one hand, Glenna contends that Mark is not entitled to any portion of the dividends or any other income from the shares because the shares were a specific gift to Glenna's Trust and not merely part of the trust remainder. *See* TEX. PROP. CODE § 116.051(1) ("The fiduciary shall distribute the net income and net principal receipts to the beneficiary who is to receive the specific property."). Moreover, we may assume that Glenna, Weston, and Lane would not have decided to cause W. Silver Recycling to distribute the dividends had the shares not been transferred to Glenna's Trust. Although we do not resolve all of these arguments here, we note that a proper valuation of the shares as of the date of Jeannette's death must reflect the company's value prior to any distribution, and that value should reflect the $6 million the company had available for distributions at that time.[8] Therefore, the timing of the transfer should not meaningfully affect the amount Mark's Trust receives as its equivalent allocation of the Sub-Trusts' assets based on the shares' value on the date of Jeannette's death, which value

---

[8] *See Bergin v. Bergin*, 315 S.W.2d 943, 949 (Tex. 1958) (explaining that the book value of each share decreased after the declaration of a dividend); *see also Am. Akaushi Ass'n v. Twinwood Cattle Co.*, No. 14-21-00701-CV, 2022 WL 2678851, at *10 (Tex. App.—Houston [14th Dist.] July 12, 2022, order [mand. denied]) (affirming trial court's finding that dividend payments reduced company's net worth); *Argo Data Res. Corp. v. Shagrithaya*, 380 S.W.3d 249, 275 (Tex. App.—Dallas 2012, pet. denied) (noting that "the retention and reinvestment of the company's earnings benefits the corporation").

should reflect the company's then-present ability to distribute $6 million in dividends.

Finally, we note a couple points that may be helpful to the probate court on remand. First, the record reflects that even after Glenna unilaterally transferred the shares to her trust, the Sub-Trusts retained assets exceeding $9 million. Assuming that remains the case, the Sub-Trusts should possess sufficient assets to permit any disproportionate allocation necessary to ensure Mark receives a recovery that reflects the shares' proper value. And second, we note that in resolving this dispute, both Glenna and Mark owe fiduciary duties as co-trustees to all beneficiaries, meaning both their trusts, which precludes each of them from attempting to benefit only herself or himself in the process. *See Slay*, 187 S.W.2d at 388.

We hold that the probate court erred by ordering that the shares "be restored" to the Sub-Trusts when Glenna does not own or control the shares and those who do are not parties to the action. If Weston and Lane are not made parties on remand, any appropriate relief must come from Glenna or Glenna's Trust or through the ultimate distribution of the assets remaining in the Sub-Trusts.

## IV.
### Conclusion

The court of appeals erred by holding that the probate court lacked jurisdiction. But the probate court abused its discretion by ordering that the shares be restored to the Sub-Trusts because Glenna does not own or control the shares and those who do are not parties. We reverse the court of appeals' judgment vacating the probate court's order for lack of jurisdiction, and we reverse the probate court's order. We

19

remand the case to the probate court for further proceedings consistent with this opinion.

_____
Jeffrey S. Boyd
Justice

**OPINION DELIVERED:** May 10, 2024