HOUSTON LIGHTING & POWER
COMPANY, Appellant-Appellee,

v.

Annie FISHER et al.,
Appellees-Appellants.

No. 1561.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Nov. 30, 1977.

Rehearing Denied Jan. 4, 1978.

Finis E. Cowan, Justin M. Campbell, Baker & Botts, Houston, for appellees-appellants.

William H. White, Houston, for appellant-appellee.

## J. CURTISS BROWN, Chief Justice.

Both sides have appealed from the judgment rendered in this hard-fought condemnation case.

Houston Lighting and Power Company will be designated as appellant since that company perfected its appeal first. For the sake of brevity, Annie Fisher and others will be referred to as appellees even though they also occupy the position of cross-appellants.

Appellant's sole point of error contends that the jury argument on behalf of appellees was improper in numerous respects. In their role as cross-appellants, appellees assign five points of error. The first complains that the trial court erred in overruling appellees' motion for summary judgment on the grounds that the appellant had failed to pass, prior to the filing of the petition in condemnation, a resolution declaring a public necessity and convenience and authorizing the taking of the subject property by condemnation. The other four points attack the admission by the trial court of the testimony of one Hobart W. Enoch.

We consider, initially, appellant's point of error relating to jury argument. The only complaint appellant makes concerns the following opening argument:

I am not going to intentionally mislead you about any of the testimony or anything that occurred in this trial. I am not going to infer to you that I did not ask an appraiser to make an appraisal, when I did. I am not going to infer to you that I didn't write a letter to an appraiser asking him to make an appraisal, when I did.

Appellant believes that this argument amounts to an unwarranted attack on opposing counsel. We think that appellant is unduly sensitive. Evidence had been received concerning the relationship of appellant's counsel with appellees' witness Reed and whether he had written Reed concerning some other prior and unrelated case. With this background it is possible to infer that appellees' counsel was not merely establishing his own virtue but left unsaid the suggestion that appellant's counsel was not equally pure in heart. The argument was innocuous and not improper. There was no objection to it and the statement certainly was not of the nature as to constitute incurable error.

Following appellees' opening argument appellant's counsel made a strong and effective argument. During the course of his argument he took some pretty strong shots at appellees' counsel:

Now, folks, Mr. White can talk to you all he wants about credibility of witnesses, but I would submit to you that his preaching in that regard maybe sort of falls on deaf ears when we look at the reality of the situation, which is that if what Otis Grahm told us was not true, Mr. White could have put a subpoena on Mr. Wilburn and established just exactly what the fact was.

Mr. White tries to blur that over and say they got one figure once and one figure later on. He is obscuring the facts.

And further,

Now, that makes some sense, I would submit to you, unless you distort it, the way I submit to you Mr. White has twisted it.

Counsel for appellant took occasion to praise the impartiality of Hobart Enoch, the tax assessor of the Goose Creek Independent School District, saying "he has absolutely no reason to put an artificially low value on the property because the higher the values the easier it is for the independent school district to assess taxes." Appellant argued that counsel had "twisted the testimony of the witnesses" and suggested that the reference to evidence that land in the vicinity had been purchased by a light company employee was a "rabbit trail." With respect to the witness Reed he said ". . . my quarrel is that George Reed has not with honesty and integrity applied the principles of his calling, nor has he made in his direct examination to you a full disclosure." He went on to observe that while Reed was not "dishonest" he had played the "shell" game with the jury.

We do not consider any of the arguments made on behalf of the appellant to be erroneous, with the possible exception of that relating to the testimony of the tax assessor and collector. The argument taken as a whole, however, was of such a nature to invite a vigorous response. Appellees' counsel made such a response in his closing arguments, and it is to these arguments that most of appellant's complaints are directed. Appellant contends that three categories of improper argument are present: attacks upon appellant, attacks upon appellant's valuation witnesses, and attacks upon appellant's trial counsel. Some of the arguments complained of were borderline. However, appellees are correct in their claim that these improper comments were invited by or were made in response to appellant's evidence and jury argument. The most serious complaint concerns the following argument:

He carried forward the same errors in the sales that he confirmed. He wants to tell you this man has been a professor for fourteen years and a teacher and that they have held these public offices.

Ladies and gentlemen, that's kind of like saying defending the Watergate defendants because they held high public office, isn't it?

This argument was unnecessary and improper. However, appellant's objection was promptly sustained by the trial court and the jury instructed to disregard the argument.

■ In considering points relating to jury argument we follow certain well-settled principles. Counsel is not required to make such a luke-warm and sterile argument that the jury is unable to determine which side of the case he is on. Likewise, of course, counsel must be indulged the privilege of flights of oratory, and he is entitled to draw inferences from the evidence presented, whether reasonable or not.

■ Moreover, before a judgment is reversed because of improper argument of counsel, two elements must appear: (1) the argument must be improper; and (2) it must be such as to satisfy the reviewing court that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Aultman v. Dallas Railway & Terminal Co.*, 152 Tex. 509, 260 S.W.2d 596, 599 (1953); *see Goforth v. Alvey*, 153 Tex. 449, 271 S.W.2d 404 (1954); Tex.R.Civ.P. 269(e), 434.

■ Jury argument is considered "curable" if an objection is required to preserve reversible error and the argument is one for

which an instruction by the court to disregard is considered adequate relief. On the other hand, "incurable" argument is one that brings to the attention of the jury matters that could not have been properly presented in the case or are so prejudical and inflammatory that their harmfulness cannot be eliminated by an instruction from the court. An incurable argument may be one that appeals to passion or otherwise so as to make the suggestion that imaginary testimony has been presented, and which is not based upon testimony in the case. *Otis Elevator Company v. Wood*, 436 S.W.2d 324, 333 (Tex.Sup.1968); *McNeil v. Current*, 484 S.W.2d 394, 398 (Tex.Civ.App.–Houston [1st Dist.] 1972, writ ref'd n.r.e.); *Utica Mutual Insurance Company v. Jacobs*, 483 S.W.2d 500, 503 (Tex.Civ.App.–Houston [14th Dist.] 1972, no writ).

■ With the exception of the "Watergate" argument, most of the complaints by appellant relate to statements to which there was no objection. We cannot say that these arguments, viewed singly or as a whole, were reasonably calculated to cause and probably did cause the rendition of an improper judgment.

Appellant's point of error is therefore overruled.

By way of cross appeal, appellees have raised five points of error. The first point challenges the trial court's overruling of appellees' motion for summary judgment based on appellant's failure to confer jurisdiction on the court by presenting evidence that appellant's Board of Directors had made by resolution a proper determination of public convenience and necessity for condemning appellees' property.

In response to appellees' motion for summary judgment, appellant presented the affidavits and depositions of several officers of appellant including the Chairman of the Board and the Secretary and Treasurer. It appears from this evidence that during the period 1961 to 1962, appellant determined that additional generating facilities would be necessary to satisfy future demands. Various studies were conducted under the supervision of the Chairman of the Board

by the Engineering and Rate and Economic Research Departments. These studies recommended the construction of the Cedar Bayou Project which would include the purchase of certain rights-of-way for transmission lines. In November 1966, a proposed annual budget for the following year was prepared encompassing the expenditure necessary to carry out this project. Included in this budget was the acquisition of the Cedar Bayou to Webster right-of-way which covered appellees' nine acre tract. The budget also contained the statement: "[A]ll of the above rights-of-way are required for the expansion of the transmission system, and it is considered advisable to proceed with these purchases." The Board of Directors specifically approved the budget by resolution at its regular meeting on December 7, 1966. In 1967, the Board again authorized the expenditure for the Cedar Bayou to Webster right-of-way. There was also a resolution passed in 1969, subsequent to the institution of condemnation proceedings, ratifying the prior determination of convenience and necessity for acquisition of the right-of-way.

■ Appellees argue that this action by the Board was insufficient. They contend that the Board was required to pass a resolution specifically declaring the convenience and necessity for condemnation. We agree that an entity vested with the power of eminent domain must make a determination of public convenience and necessity for the acquisition of property by condemnation. The cases cited by appellee indicate that a resolution is a proper method for declaring that this determination has been made. We have found, however, no case which holds that such a formal resolution is the only method of declaring public convenience and necessity. *See Maberry v. Pedernales Electric Cooperative, Inc.*, 493 S.W.2d 268 (Tex.Civ.App.–Austin 1973, writ ref'd n. r. e.); *Horton v. County of Mills*, 468 S.W.2d 876 (Tex.Civ.App.–Austin 1971, no writ); *Stirman v. City of Tyler*, 443 S.W.2d 354 (Tex.Civ.App.–Tyler 1969, writ ref'd n. r. e.); *Vey v. City of Fort Worth*, 81 S.W.2d 228 (Tex.Civ.App.–Fort Worth 1935,

writ dism'd); M. Rayburn, Texas Law of Condemnation § 84 (1960). For example, one case states that the governing body should adopt a resolution or "other action." *Maberry v. Pedernales Electric Cooperative, Inc.*, 493 S.W.2d at 270–71.

We note two cases cited by appellant in which no resolution of convenience and necessity was passed. In *Bolin v. Brazoria County*, 381 S.W.2d 206 (Tex.Civ.App.– Houston 1964, no writ), the State Highway Commission passed orders directing the State Engineer to prepare engineering surveys and right-of-way deeds for the proposed construction of a highway facility. Subsequently, the Commission let a contract to build a road on part of the highway. The court held that from these facts it could be concluded that a determination of necessity and suitability was made by the Commission. *Id.* at 209.

In *Boucher v. Texas Turnpike Authority*, 317 S.W.2d 594 (Tex.Civ.App.–Texarkana 1958, no writ), the only evidence of a determination of convenience and necessity by the Texas Turnpike Authority's Board of Directors was certain resolutions stating approval of a survey and appraisal of tracts required, and directions to the operating personnel to acquire the tracts by purchase or condemnation. The court found that those actions, along with the entire record on summary judgment, constituted a sufficient showing of compliance with the prerequisites of condemnation. *Id.* at 601–02.

■ In this case the Cedar Bayou Project was the subject of several years of studies by appellant's departments. These studies were made for the purpose of determining the most practical and feasible location for the generating plant and connecting transmission lines. These studies resulted in a proposed budget which appellant's Board of Directors approved by resolution. There was evidence that the members of the Board were not apprised of the specific details of the project including the necessity of acquiring the specific nine acre tract owned by appellees; however, considering the magnitude of this project, it would be unreasonable to require that each individual member of the Board be knowledgeable about every specific acquisition. It is sufficient that they approved the acquisition of a right-of-way from the plant to Webster, which included appellees' tract. The budget itself stated that these acquisitions were "required" and "advisable" for the expansion of the transmission system. Considering these facts, we feel that appellant's Board of Directors made the requisite determination of the convenience and necessity of acquiring appellees' tract.

Appellees' points of error two, three, four and five complain of the admission of the deposition of Hobart W. Enoch. Enoch had been Tax Assessor and Collector for the Goose Creek Consolidated Independent School District. He is also a certified Assessment Evaluator, a licensed Certified Texas Assessor, and a licensed real estate broker. Mr. Enoch was asked his opinion of the value of appellees' property as of January 1, 1969, and he stated that it was valued at $975.00 per acre. Appellees objected to the admission of this testimony, stating that this valuation was not based on the proper test of market value in condemnation proceedings, but rather, on the tax assessment of the property as of January 1, 1969. Appellant, on the other hand, argues that Enoch did not testify to the tax assessment value of the appellees' property, but only to his opinion of the market value which he defined as "the amount of money a willing seller and willing buyer would pay . . . . ."

■ In this regard, it is generally held that the value placed upon real property for the purposes of taxation by assessment without participation of the landowner is not evidence of its value for purposes other than taxation. *See McLane v. Paschal*, 74 Tex. 20, 11 S.W. 837, 839 (1889); *West v. Houston Lighting & Power Co.*, 483 S.W.2d 352, 358 (Tex.Civ.App.–Houston [1st Dist.] 1972, no writ); *see generally* Annot., 39 A.L.R.2d 209 (1955). Such testimony is hearsay and represents an opinion not subject to cross-examination. *West v. Houston Lighting & Power Co.*, 483 S.W.2d at 358; Annot., 39 A.L.R.2d 209 § 9 (1955). Exclusion of such testimony is also considered a

rule of practicality, since tax assessments rarely reflect the true market value. 5 Nichols on Eminent Domain § 22.1 (3d ed. 1975).

While it is true that the manner in which counsel couched the question of valuation was in the form of Enoch's opinion, we cannot overlook the fact that this witness was the tax assessor for property in Chambers County at the time of taking, and that his opinion was of the property value *not at the time of taking but as of January 1, 1969*, a date more significant for tax assessment purposes than for determining the market value of the condemned property. We cannot condone appellant doing indirectly what it would be prohibited from doing directly. The court should have refused to allow such evidence. In this case, however, the jury's answers to special issues on the value of the property condemned are clearly reflective of the valuation given by the other witnesses and do not appear to have been influenced by Mr. Enoch's testimony. Under such circumstances we consider the trial court's error in admitting the deposition into evidence to have been harmless. *See State v. Stiefer,* 443 S.W.2d 275 (Tex.Civ.App.–Tyler 1969, writ ref'd n.r.e.).

The judgment of the trial court is affirmed.

Affirmed.