**Roy W. ZBOYAN, Appellant,**

v.

**FAR HILLS UTILITY DISTRICT, Appellee.**

No. 09–06–147 CV.

Court of Appeals of Texas, Beaumont.

Submitted on April 16, 2007.

Decided April 26, 2007.

---

James B. Blackburn, Jr., Mary W. Carter, Charles W. Irvine, Blackburn Carter, P.C., Houston, for appellant.

Michael C. Falick, Sydney N. Floyd, Rothfelder & Falick, LLP, Houston, for appellee.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

In this appeal, Roy W. Zboyan challenges Far Hills Utility District's exercise of its power of eminent domain to acquire a 3.287 acre tract of land located just beyond the borders of the district. The trial court denied Zboyan's motion for partial summary judgment, which sought dismissal of the utility district's petition to acquire fee simple title to Zboyan's property, and granted the utility district's motion for partial summary judgment on its condemnation petition. The trial court entered an agreed judgment on the amount of compensation to be paid for the property, and Zboyan appealed. Zboyan contends that Far Hills' board failed to adhere to the strict requirements of the statute that authorizes the exercise of the power of eminent domain by the utility district, and that the trial court erred by granting summary judgment on the basis condemnation was necessary in order to construct the utility district's proposed wastewater treatment plant. We affirm the trial court's judgment for the reasons explained in this opinion.[1]

Far Hills Utility District is a governmental agency authorized under the Texas Constitution and vested with the power of eminent domain by the Texas Legislature. See Tex. Const. art. XVI, § 59; Tex. Water Code Ann. § 49.222 (Vernon 2000). The Water Code delegates eminent domain powers to the district in part as follows:

A district or water supply corporation may acquire by condemnation any land, easements, or other property inside or outside the district boundaries, or the boundaries of the certificated service area for a water supply corporation, necessary for water, sanitary sewer, storm drainage, or flood drainage or control purposes or for any other of its projects or purposes, and may elect to condemn either the fee simple title or a lesser property interest.

Tex. Water Code Ann. § 49.222(a) (Vernon 2000).

With respect to wastewater treatment, the powers of the district are granted subject to the state regionalization policy, as follows:

The powers and duties conferred on the district are granted subject to the policy of the state to encourage the development and use of integrated area-wide wastewater collection, treatment, and disposal systems to serve the wastewater disposal needs of the citizens of the state whenever economically feasible and competitive to do so, it being an

1. Zboyan also asks we take judicial notice that the Texas Commission on Environmental Quality has not granted a new Texas Pollutant Discharge Elimination System permit to the district, and asks that we stay our decision until the permitting process concludes. The eminent domain powers delegated by statute to the district are "subject to" the state policy of promoting regionalization, implemented by the TCEQ, to encourage area-wide waste water disposal systems. Tex. Water Code Ann. § 49.230 (Vernon 2000). The TCEQ may deny a proposed permit based on consideration of need and regional treatment options. See Tex. Water Code Ann. § 26.0282 (Vernon 2000). This is separate and apart from the condemnation proceedings that were properly before the trial court.

objective of the policy to avoid the economic burden to the people and the impact on the quality of the water in the state that result from the construction and operation of numerous small wastewater collection, treatment, and disposal facilities to serve an area when an integrated area-wide wastewater collection, treatment, and disposal system for the area can be reasonably provided.

Tex. Water Code Ann. § 49.230 (Vernon 2000).

■■■ Zboyan does not dispute that the statute grants to utility districts the power to acquire property by condemnation, but he argues that Far Hills improperly exercised the power delegated to it. Private property may only be taken for a public use. *Borden v. Trespalacios Rice & Irrigation Co.*, 98 Tex. 494, 86 S.W. 11, 15 (1905); *see* Tex. Const. art. I, § 17. The Texas Supreme Court has stated that "When the right to condemn is not limited to cases of necessity, the question of necessity is not a matter to be pleaded and proved." *Coastal Ind. Water Auth. v. Celanese Corp. of America*, 592 S.W.2d 597, 600 (Tex.1979) (citing *Hous. Auth. of City of Dallas v. Higginbotham*, 135 Tex. 158, 143 S.W.2d 79, 88 (1940) and *Joyce v. Texas Power & Light Co.*, 298 S.W. 627, 629 (Tex.Civ.App.-El Paso, no writ)). Section 49.222 of the Texas Water Code gives the utility district the power to condemn land "necessary" for sanitary sewer purposes. To constitute public use, the utility district's intended use of the property "must actually be necessary to advance or achieve the ostensible public use." *Whittington v. City of Austin*, 174 S.W.3d 889, 896 (Tex.App.-Austin 2005, pet. denied). Generally, courts interfere with the exercise of the power of eminent domain only

in instances where the condemnor clearly abused its discretion. *See Brazos River Conservation & Reclamation Dist. v. Harmon*, 178 S.W.2d 281, 289 (Tex.Civ.App.-Eastland 1944, writ ref'd w.o.m.). For instance, in *Harmon* the board of directors could not condemn land surrounding a reservoir for purposes not authorized by the statutory grant of eminent domain. *Id.* at 291. Likewise, eminent domain authority for construction of a municipal water supply could not be exercised to condemn contiguous land for use as cabin sites for retired officials. *City of Wichita Falls v. Thompson*, 431 S.W.2d 909, 913 (Tex.Civ. App.-Fort Worth 1968, writ ref'd n.r.e.). Similarly, a city could not take a fee simple interest where it required only air rights and the city had no intention of using the surface for municipal airport purposes. *City of Houston v. Hamons*, 496 S.W.2d 662, 665 (Tex.Civ.App.-Houston [14th Dist.] 1973, writ ref'd n.r.e.).

■ Zboyan argues that Far Hills abused its discretion because it condemned more land than necessary to construct a wastewater treatment facility. According to Zboyan, Far Hills "needs" only an easement over 2.058 acres to serve as a buffer zone for nuisance odors, as opposed to the 3.287 acres in fee simple sought in the utility district's petition. To support his contention, Zboyan relies on documents that Far Hills filed with the Texas Commission on Environmental Quality. The original application filed with the TCEQ disclosed the utility district's plan to acquire a 3.287 tract in fee simple, but a diagram appended to an amended application filed with the TCEQ in December 2004 shows the district taking a 2.058 acre easement from Zboyan.[2] Although the

---

**2.** According to the president of the board of Far Hills Utility District, the alternate plan came about in an attempt to secure Zboyan's

cooperation. After Zboyan rejected the offer to buy an easement, the board proceeded with

metes and bounds description and the governing board's resolution apparently submitted with the new diagram describe the same 3.287 acre tract at issue in this appeal, the transmittal letter states that Far Hills "elected to acquire an easement restricting the construction of residential structures in lieu of fee ownership for the portions of the buffer zone not currently owned by the applicant." Likewise, a bond proposal submitted to the TCEQ included the diagram that depicts a 2.058 acre easement. Because Far Hills obtained a preliminary approval for a wastewater treatment plant using a diagram that showed the district taking an easement over 2.058 acres, Zboyan contends Far Hills failed to establish as a matter of law a necessity to acquire a 3.287 acre tract in fee simple.

The TCEQ required a 150–foot buffer zone around the proposed wastewater treatment plant. The Commission's sole requisite for the buffer zone was that it prohibit construction of residential structures within any part of the zone not owned by the utility district. Nevertheless, the fact that acquisition of a lesser estate than fee simple would not have prevented Far Hills from obtaining a permit from the TCEQ does not affect the utility district's power to condemn a fee simple interest. Section 49.222 expressly grants a utility district the option of condemning either a fee interest or a lesser interest. *See* Tex. Water Code § 49.222. It is undisputed that Far Hills exercised its discretion to condemn a fee interest.

The discrepancy between the two diagrams submitted to the TCEQ does not create a fact issue on whether it was necessary for the utility district to condemn 3.287 acres rather than 2.058 acres. The engineer who prepared both diagrams submitted an affidavit in which he explains its original plan to condemn a fee simple

that he prepared the second plan at the request of the board, that the board asked him to assist in reviewing the options when the owners rejected the offer of an easement, and that he recommended the original plan because taking a larger tract provides room for construction, operational activities, and traffic. Consistent with the engineer's description of events, the board passed three resolutions: (1) it voted in May 2004 to condemn 3.287 acres in fee; (2) it voted in March 2005 to acquire an easement but retained the same property description; and (3) it voted in November 2005 to condemn 3.287 acres in fee. Although Far Hills communicated to the TCEQ its election to take an easement over 2.058 acres, there is no fact issue on whether the utility district subsequently decided to return to its original plan for the wastewater treatment plant. There is no summary judgment evidence contradicting the utility district's declared intent to use the 3.287 acre tract for a wastewater treatment plant and buffer zone.

■ Zboyan argues that Far Hills exhibited bad faith in passing a resolution to condemn land based upon a map that is no longer valid. There is no summary judgment evidence to the effect that a wastewater treatment plant eventually built by Far Hills must be constructed according to the second diagram submitted to the TCEQ. According to the tentative draft of the permit in the summary judgment record, Far Hills will submit its plans for final approval before construction commences and the permit itself can be amended. The record does not demonstrate that the TCEQ permit application limits Far Hills to a particular design for the wastewater treatment plant.

■ Zboyan contends it was not "necessary" for Far Hills to condemn interest.

Zboyan's property because Far Hills had other alternatives that it failed to adequately investigate. In connection with this part of his argument, Zboyan argues the district could either renew its contract with Montgomery County Utility District No. 2 and participate in the expansion of that district's wastewater treatment facility, or build a wastewater treatment facility on undeveloped land inside the district. Section 49.222 of the Texas Water Code expressly delegates to utility districts the right of eminent domain to condemn property outside the district. "When the use is public, the necessity or expediency of appropriating any particular property is not a subject of judicial cognizance." *Hous. Auth. of City of Dallas v. Higginbotham*, 135 Tex. 158, 143 S.W.2d 79, 89 (quoting *Imperial Irrigation Co. v. Jayne*, 104 Tex. 395, 138 S.W. 575, 587 (1911)). The decision of how much land to take is generally determined by the condemnor. *Bradford v. Magnolia Pipe Line Co.*, 262 S.W.2d 242, 246 (Tex.Civ.App.-Eastland 1953, no writ). In *Bradford*, the condemnation of a 50–foot–wide strip of land did not fail for lack of evidence of need for any particular width of pipeline easement. *Id.* at 245–46. Likewise, in *Snellen v. Brazoria County*, the existence of better suited vacant lots did not hinder the exercise of the right of eminent domain to acquire land located in an esplanade for the purpose of constructing a fire station. *See Snellen v. Brazoria County*, 224 S.W.2d 305, 310 (Tex.Civ. App.-Galveston 1949, writ ref'd n.r.e.). Claims of lack of need for the project and issues of the greater feasibility of alternate plans "are concluded when the applicant for condemnation, acting within the scope of its authority, determines its use is nec-

essary." *Wagoner*, 345 S.W.2d at 763. The existence of a feasible alternate plan is not evidence of an abuse of discretion. *See Ludewig v. Houston Pipeline Co.*, 773 S.W.2d 610, 614 (Tex.App.-Corpus Christi 1989, writ denied).

■ Zboyan argues that a recent amendment to the Texas Water Code addresses the Legislature's concern that some utility districts abuse their power of eminent domain by initiating condemnation proceedings concerning property outside the district. *See* Tex. Water Code Ann. § 54.209 (Vernon Supp.2006).[3] This section, which states that a district may not use the power of eminent domain outside the district's boundaries to acquire property for a wastewater treatment plant, applies only to condemnation actions commenced by municipal utility districts after June 9, 2005. Section 54.209 of the Texas Water Code is inapplicable both because Far Hills is not operated as a municipal utility district and because the Act was not made retroactive. Zboyan argues the Legislature articulated that condemning property located outside of a utility district constitutes an abuse of discretion, but we must apply the law as it is written. Zboyan identifies no law that prohibits a special utility district such as Far Hills from exercising the grant of authority to "acquire by condemnation any land, ... inside or outside the district boundaries, ... necessary for ... its projects...." *See* Tex. Water Code Ann. § 49.222(a). "[S]pecific, unambiguous statutes are the current law and should not be construed by a court to mean something other than the plain words say unless there is an obvious error ... or application of the literal language of

---

**3.** Zboyan's motion for summary judgment includes the author's/sponsor's statement of intent for HB 1208. The statement of intent recites that "some districts abuse [the broad power of eminent domain] by initiating con-

demnation proceedings concerning property located outside of their district for purposes of constructing water/wastewater treatment facilities."

a legislative enactment would produce an absurd result. . . ." *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). Far Hills acted within the limits of the legislative grant of the power of eminent domain. We hold that the trial court did not err when it held that Far Hills has the statutory right to acquire the property by eminent domain and that public necessity exists for acquiring the property. Issue one is overruled.

Zboyan also contends that the trial court erred in granting Far Hills' motion for summary judgment in light of the conflicting resolutions issued by the district's board. A condemnation petition must: (1) describe the property to be condemned; (2) state the purpose for which the entity intends to use the property; (3) state the name of the owner of the property if the owner is known; and (4) state that the entity and the property owner are unable to agree on the damages. Tex. Prop.Code Ann. § 21.012(b) (Vernon 2004). The condemnor must prove at trial that its governing board "has by affirmative action made a determination of necessity." *Maberry v. Pedernales Elec. Coop., Inc.*, 493 S.W.2d 268, 271 (Tex.Civ.App.-Austin 1973, writ ref'd n.r.e.). Zboyan contends the utility district failed to articulate a stated purpose for the condemnation because it passed conflicting resolutions. Because one resolution indicates the district needs a 2.058 acre buffer easement for odors and the others indicate the district requires a 3.287 acre fee for a wastewater treatment plant, Zboyan argues it is unclear which resolution prevails. Citing *Webb v. Dameron*, 219 S.W.2d 581, 584 (Tex.Civ.App.-Amarillo 1949, writ ref'd n.r.e.), Zboyan contends multiple differing board resolutions reflect wilful and unreasoning action. In *Webb v. Dameron*, the landowner's consulting engineer testified that he had no objection from an engineering standpoint to the site selected by the governing body, but recommended feasible alternative locations. *Id.* at 585. The court held that "[w]hatever merits the engineer's recommendation may have, it was, nevertheless, beyond the trial court's scope of authority, as it is beyond that of this court, to subject to judicial cognizance the action of the City Council in selecting a site for a sewage disposal plant." *Id.*

The closest case we have located involved a utility company that conducted studies, obtained recommendations, included the acquisition of the subject rights-of-way in its budget, and placed in the budget a statement that it was advisable to purchase the property, but whose board failed to pass a resolution until after condemnation proceedings had commenced. *Houston Lighting & Power Co. v. Fisher*, 559 S.W.2d 682, 685 (Tex.Civ.App.-Houston [14th Dist.] 1977, writ ref'd n.r.e.). The appellate court held that the board made the requisite determination of the convenience and necessity of acquiring the landowner's tract. *Id.* at 686.

Taken in their context, the resolutions chronicle the board's return to its original plan after attempting to reach a compromise with the landowner. The intervening resolution was not an irrevocable election, and there could be no genuine confusion over the district's intent at the time of the summary judgment hearing. The trial court did not err when it held that Far Hills complied with the prerequisites necessary for the trial court's jurisdiction. Issue Two is overruled.

Appellant places much emphasis on the utility district's permit application. Generally, issues regarding the feasibility of the wastewater treatment plant and the propriety of the district's chosen location for the project are appropriately addressed to the agency considering the application to construct the facility, not to the

trial court hearing the condemnation petition.

■ Zboyan argues the proposed wastewater treatment plant violates the Legislature's declared general policy of "regionalization" expressed in Section 26.081 of the Texas Water Code. *See* Tex. Water Code Ann. § 26.081(a) (Vernon 2000) ("The legislature finds and declares that it is necessary to the health, safety, and welfare of the people of this state to implement the state policy to encourage and promote the development and use of regional and area-wide waste collection, treatment, and disposal systems to serve the waste disposal needs of the citizens of the state and to prevent pollution and maintain and enhance the quality of the water in the state."). The eminent domain power delegated by statute to the utility district is subject to the state policy to encourage area-wide wastewater disposal systems. Tex. Water Code Ann. § 49.230 (Vernon 2000). However, the utility district's decision to build its own wastewater treatment facility, rather than pay for the expansion of the wastewater treatment plant operated by Montgomery County Utility District No. 2, is not an issue to be decided by a jury in the condemnation proceeding. *See Wagoner*, 345 S.W.2d at 763–64. The implementation of the state's policy is the responsibility of the administrative agency-the TCEQ-and is not delegated to juries considering individual condemnation proceedings. *See* Tex. Water Code Ann. § 26.082 (Vernon 2000).

■ Our review of the trial court's judgment is limited to the evidence in the summary judgment record. *See* Tex.R. Civ. P. 166a(c). The record reveals an ongoing administrative action. If the permit is granted, there is nothing in the record to prevent the exercise by the utility district of its power of eminent domain. At Zboyan's request, we also took judicial notice of a preliminary administrative ruling. The administrative law judge recommended the district's permit be denied, in part because the administrative law judge believed the facility is not needed and granting the permit would conflict with the state regionalization policy to encourage area-wide wastewater disposal systems. The district's power of eminent domain as delegated by statute is subject to the state policy implemented by the TCEQ. It is possible that Far Hills will ultimately be denied a permit on this basis and that the declared public purpose for the exercise of eminent domain will be lost. The future decision of the administrative agency, however, was neither a part of the trial court record nor of the appellate record. It cannot be considered in this appeal. We affirm the judgment of the trial court.

AFFIRMED.

DAVID GAULTNEY, Justice
concurring in part and dissenting in part.

We should not affirm the trial court's judgment without regard to whether the TCEQ permit is granted. There remains the possibility Far Hills' permit will be denied by TCEQ because of the state regionalization policy to encourage area-wide wastewater disposal systems. While I concur with the Court's other rulings concerning the issues presented on appeal, I respectfully dissent from the Court's judgment, because Far Hills has not obtained a TCEQ permit for the wastewater treatment plant. As the Court explains, the district's power of eminent domain, as delegated by statute, is subject to the state regionalization policy implemented by TCEQ.

I agree with the Court's statement that if Far Hills is denied a permit by TCEQ, the declared public purpose for the exercise of eminent domain will be lost. I would hold the property may be taken by

the district through the exercise of its delegated eminent domain power only if the required TCEQ permit for the intended use of the property is obtained. The cause should be remanded to the trial court with instructions for that court to stay the condemnation proceeding until the permit is finally either granted or denied. *See generally* Tex.R.App. P. 43.6. ("The court of appeals may make any other appropriate order that the law and the nature of the case require."). If the permit is granted by TCEQ, the condemnation of the property may then be approved by the trial court. If the permit is finally denied, however, the district's condemnation petition should be dismissed.