In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-06-147 CV


____________________



ROY W. ZBOYAN, Appellant



V.



FAR HILLS UTILITY DISTRICT, Appellee






On Appeal from the County Court at Law No. 2


Montgomery County, Texas


Trial Cause No. 05-03-02538-CV






OPINION



 In this appeal, Roy W. Zboyan challenges Far Hills Utility District's exercise of its
power of eminent domain to acquire a 3.287 acre tract of land located just beyond the borders
of the district. The trial court denied Zboyan's motion for partial summary judgment, which
sought dismissal of the utility district's petition to acquire fee simple title to Zboyan's
property, and granted the utility district's motion for partial summary judgment on its
condemnation petition. The trial court entered an agreed judgment on the amount of
compensation to be paid for the property, and Zboyan appealed. Zboyan contends that Far
Hills' board failed to adhere to the strict requirements of the statute that authorizes the
exercise of the power of eminent domain by the utility district, and that the trial court erred
by granting summary judgment on the basis condemnation was necessary in order to
construct the utility district's proposed wastewater treatment plant. We affirm the trial
court's judgment for the reasons explained in this opinion. (1)

 Far Hills Utility District is a governmental agency authorized under the Texas
Constitution and vested with the power of eminent domain by the Texas Legislature. See
Tex. Const. art. XVI, § 59; Tex. Water Code Ann. § 49.222 (Vernon 2000). The Water
Code delegates eminent domain powers to the district in part as follows:


 A district or water supply corporation may acquire by condemnation any land,
easements, or other property inside or outside the district boundaries, or the
boundaries of the certificated service area for a water supply corporation,
necessary for water, sanitary sewer, storm drainage, or flood drainage or
control purposes or for any other of its projects or purposes, and may elect to
condemn either the fee simple title or a lesser property interest.

Tex. Water Code Ann. § 49.222(a) (Vernon 2000).


 With respect to wastewater treatment, the powers of the district are granted subject
to the state regionalization policy, as follows: 

 The powers and duties conferred on the district are granted subject to the
policy of the state to encourage the development and use of integrated
area-wide wastewater collection, treatment, and disposal systems to serve the
wastewater disposal needs of the citizens of the state whenever economically
feasible and competitive to do so, it being an objective of the policy to avoid
the economic burden to the people and the impact on the quality of the water
in the state that result from the construction and operation of numerous small
wastewater collection, treatment, and disposal facilities to serve an area when
an integrated area-wide wastewater collection, treatment, and disposal system
for the area can be reasonably provided.

 

Tex. Water Code Ann. § 49.230 (Vernon 2000). 


 Zboyan does not dispute that the statute grants to utility districts the power to acquire
property by condemnation, but he argues that Far Hills improperly exercised the power
delegated to it. Private property may only be taken for a public use. Borden v. Trespalacios
Rice & Irrigation Co., 98 Tex. 494, 86 S.W. 11, 15 (1905); see Tex. Const. art. I, § 17. The
Texas Supreme Court has stated that "When the right to condemn is not limited to cases of
necessity, the question of necessity is not a matter to be pleaded and proved." Coastal Ind.
Water Auth. v. Celanese Corp. of America, 592 S.W.2d 597, 600 (Tex. 1979) (citing Hous.
Auth. of City of Dallas v. Higginbotham, 135 Tex. 158, 143 S.W.2d 79, 88 (1940) and Joyce
v. Texas Power & Light Co., 298 S.W. 627, 692 (Tex. Civ. App.--El Paso, no writ)). Section
49.222 of the Texas Water Code gives the utility district the power to condemn land
"necessary" for sanitary sewer purposes. To constitute public use, the utility district's
intended use of the property "must actually be necessary to advance or achieve the ostensible
public use." Whittington v. City of Austin, 174 S.W.3d 889, 896 (Tex. App.--Austin 2005,
pet. denied). Generally, courts interfere with the exercise of the power of eminent domain
only in instances where the condemnor clearly abused its discretion. See Brazos River
Conservation & Reclamation Dist. v. Harmon, 178 S.W.2d 281, 289 (Tex. Civ. App.--Eastland 1944, writ ref'd w.o.m.). For instance, in Harmon the board of directors could not
condemn land surrounding a reservoir for purposes not authorized by the statutory grant of
eminent domain. Id. at 291. Likewise, eminent domain authority for construction of a
municipal water supply could not be exercised to condemn contiguous land for use as cabin
sites for retired officials. City of Wichita Falls v. Thompson, 431 S.W.2d 909, 913 (Tex.
Civ. App.--Fort Worth 1968, writ ref'd n.r.e.). Similarly, a city could not take a fee simple
interest where it required only air rights and the city had no intention of using the surface for
municipal airport purposes. City of Houston v. Hamons, 496 S.W.2d 662, 665 (Tex. Civ.
App.--Houston [14th Dist.] 1973, writ ref'd n.r.e.).

 Zboyan argues that Far Hills abused its discretion because it condemned more land
than necessary to construct a wastewater treatment facility. According to Zboyan, Far Hills
"needs" only an easement over 2.058 acres to serve as a buffer zone for nuisance odors, as
opposed to the 3.287 acres in fee simple sought in the utility district's petition. To support
his contention, Zboyan relies on documents that Far Hills filed with the Texas Commission
on Environmental Quality. The original application filed with the TCEQ disclosed the utility
district's plan to acquire a 3.287 tract in fee simple, but a diagram appended to an amended
application filed with the TCEQ in December 2004 shows the district taking a 2.058 acre
easement from Zboyan. (2) Although the metes and bounds description and the governing
board's resolution apparently submitted with the new diagram describe the same 3.287 acre
tract at issue in this appeal, the transmittal letter states that Far Hills "elected to acquire an
easement restricting the construction of residential structures in lieu of fee ownership for the
portions of the buffer zone not currently owned by the applicant." Likewise, a bond proposal
submitted to the TCEQ included the diagram that depicts a 2.058 acre easement. Because
Far Hills obtained a preliminary approval for a wastewater treatment plant using a diagram
that showed the district taking an easement over 2.058 acres, Zboyan contends Far Hills
failed to establish as a matter of law a necessity to acquire a 3.287 acre tract in fee simple. 

 The TCEQ required a 150-foot buffer zone around the proposed wastewater treatment
plant. The Commission's sole requisite for the buffer zone was that it prohibit construction
of residential structures within any part of the zone not owned by the utility district.
Nevertheless, the fact that acquisition of a lesser estate than fee simple would not have
prevented Far Hills from obtaining a permit from the TCEQ does not affect the utility
district's power to condemn a fee simple interest. Section 49.222 expressly grants a utility
district the option of condemning either a fee interest or a lesser interest. See Tex. Water
Code § 49.222. It is undisputed that Far Hills exercised its discretion to condemn a fee
interest.

 The discrepancy between the two diagrams submitted to the TCEQ does not create a
fact issue on whether it was necessary for the utility district to condemn 3.287 acres rather
than 2.058 acres. The engineer who prepared both diagrams submitted an affidavit in which
he explains that he prepared the second plan at the request of the board, that the board asked
him to assist in reviewing the options when the owners rejected the offer of an easement, and
that he recommended the original plan because taking a larger tract provides room for
construction, operational activities, and traffic. Consistent with the engineer's description
of events, the board passed three resolutions: (1) it voted in May 2004 to condemn 3.287
acres in fee; (2) it voted in March 2005 to acquire an easement but retained the same property
description; and (3) it voted in November 2005 to condemn 3.287 acres in fee. Although Far
Hills communicated to the TCEQ its election to take an easement over 2.058 acres, there is
no fact issue on whether the utility district subsequently decided to return to its original plan
for the wastewater treatment plant. There is no summary judgment evidence contradicting
the utility district's declared intent to use the 3.287 acre tract for a wastewater treatment plant
and buffer zone.

 Zboyan argues that Far Hills exhibited bad faith in passing a resolution to condemn
land based upon a map that is no longer valid. There is no summary judgment evidence to
the effect that a wastewater treatment plant eventually built by Far Hills must be constructed
according to the second diagram submitted to the TCEQ. According to the tentative draft of
the permit in the summary judgment record, Far Hills will submit its plans for final approval
before construction commences and the permit itself can be amended. The record does not
demonstrate that the TCEQ permit application limits Far Hills to a particular design for the
wastewater treatment plant.

 Zboyan contends it was not "necessary" for Far Hills to condemn Zboyan's property
because Far Hills had other alternatives that it failed to adequately investigate. In connection
with this part of his argument, Zboyan argues the district could either renew its contract with
Montgomery County Utility District No. 2 and participate in the expansion of that district's
wastewater treatment facility, or build a wastewater treatment facility on undeveloped land
inside the district. Section 49.222 of the Texas Water Code expressly delegates to utility
districts the right of eminent domain to condemn property outside the district. "When the use
is public, the necessity or expediency of appropriating any particular property is not a subject
of judicial cognizance." Hous. Auth. of City of Dallas v. Higginbotham, 135 Tex. 158, 143
S.W.2d 79, 89 (quoting Imperial Irrigation Co. v. Jayne, 104 Tex. 395, 138 S.W. 575, 587
(1911)). The decision of how much land to take is generally determined by the condemnor. 
Bradford v. Magnolia Pipe Line Co., 262 S.W.2d 242, 246 (Tex. Civ. App.--Eastland 1953,
no writ). In Bradford, the condemnation of a 50-foot-wide strip of land did not fail for lack
of evidence of need for any particular width of pipeline easement. Id. at 245-46. Likewise,
in Snellen v. Brazoria County, the existence of better suited vacant lots did not hinder the
exercise of the right of eminent domain to acquire land located in an esplanade for the
purpose of constructing a fire station. See Snellen v. Brazoria County, 224 S.W.2d 305, 310
(Tex. Civ. App.--Galveston 1949, writ ref'd n.r.e.). Claims of lack of need for the project
and issues of the greater feasibility of alternate plans "are concluded when the applicant for
condemnation, acting within the scope of its authority, determines its use is necessary." 
Wagoner, 345 S.W.2d at 763. The existence of a feasible alternate plan is not evidence of
an abuse of discretion. See Ludewig v. Houston Pipeline Co., 773 S.W.2d 610, 614 (Tex.
App.--Corpus Christi 1989, writ denied).

 Zboyan argues that a recent amendment to the Texas Water Code addresses the
Legislature's concern that some utility districts abuse their power of eminent domain by
initiating condemnation proceedings concerning property outside the district. See Tex.
Water Code Ann. § 54.209 (Vernon Supp. 2006). (3) This section, which states that a district
may not use the power of eminent domain outside the district's boundaries to acquire
property for a wastewater treatment plant, applies only to condemnation actions commenced
by municipal utility districts after June 9, 2005. Section 54.209 of the Texas Water Code is
inapplicable both because Far Hills is not operated as a municipal utility district and because
the Act was not made retroactive. Zboyan argues the Legislature articulated that condemning
property located outside of a utility district constitutes an abuse of discretion, but we must
apply the law as it is written. Zboyan identifies no law that prohibits a special utility district
such as Far Hills from exercising the grant of authority to "acquire by condemnation any
land, . . . inside or outside the district boundaries, . . . necessary for . . . its projects. . . ."
See Tex. Water Code Ann. § 49.222(a). "[S]pecific, unambiguous statutes are the current
law and should not be construed by a court to mean something other than the plain words say
unless there is an obvious error . . . or application of the literal language of a legislative
enactment would produce an absurd result. . . ." Fleming Foods of Tex., Inc. v. Rylander, 6
S.W.3d 278, 284 (Tex. 1999). Far Hills acted within the limits of the legislative grant of the
power of eminent domain. We hold that the trial court did not err when it held that Far Hills
has the statutory right to acquire the property by eminent domain and that public necessity
exists for acquiring the property. Issue one is overruled.

 Zboyan also contends that the trial court erred in granting Far Hills' motion for
summary judgment in light of the conflicting resolutions issued by the district's board. A
condemnation petition must: (1) describe the property to be condemned; (2) state the purpose
for which the entity intends to use the property; (3) state the name of the owner of the
property if the owner is known; and (4) state that the entity and the property owner are unable
to agree on the damages. Tex. Prop. Code Ann. § 21.012(b) (Vernon 2004). The condemnor
must prove at trial that its governing board "has by affirmative action made a determination
of necessity." Maberry v. Pedernales Elec. Coop., Inc., 493 S.W.2d 268, 271 (Tex. Civ.
App.--Austin 1973, writ ref'd n.r.e.). Zboyan contends the utility district failed to articulate
a stated purpose for the condemnation because it passed conflicting resolutions. Because one
resolution indicates the district needs a 2.058 acre buffer easement for odors and the others
indicate the district requires a 3.287 acre fee for a wastewater treatment plant, Zboyan argues
it is unclear which resolution prevails. Citing Webb v. Dameron, 219 S.W.2d 581, 584 (Tex.
Civ. App.--Amarillo 1949, writ ref'd n.r.e.), Zboyan contends multiple differing board
resolutions reflect wilful and unreasoning action. In Webb v. Dameron, the landowner's
consulting engineer testified that he had no objection from an engineering standpoint to the
site selected by the governing body, but recommended feasible alternative locations. Id. at
585. The court held that "[w]hatever merits the engineer's recommendation may have, it
was, nevertheless, beyond the trial court's scope of authority, as it is beyond that of this
court, to subject to judicial cognizance the action of the City Council in selecting a site for
a sewage disposal plant." Id.

 The closest case we have located involved a utility company that conducted studies,
obtained recommendations, included the acquisition of the subject rights-of-way in its
budget, and placed in the budget a statement that it was advisable to purchase the property,
but whose board failed to pass a resolution until after condemnation proceedings had
commenced. Houston Lighting & Power Co. v. Fisher, 559 S.W.2d 682, 685 (Tex. Civ.
App.--Houston [14th Dist.] 1977, writ ref'd n.r.e.). The appellate court held that the board
made the requisite determination of the convenience and necessity of acquiring the
landowner's tract. Id. at 686.

 Taken in their context, the resolutions chronicle the board's return to its original plan
after attempting to reach a compromise with the landowner. The intervening resolution was
not an irrevocable election, and there could be no genuine confusion over the district's intent
at the time of the summary judgment hearing. The trial court did not err when it held that Far
Hills complied with the prerequisites necessary for the trial court's jurisdiction. Issue Two
is overruled.

 Appellant places much emphasis on the utility district's permit application. Generally,
issues regarding the feasibility of the wastewater treatment plant and the propriety of the
district's chosen location for the project are appropriately addressed to the agency
considering the application to construct the facility, not to the trial court hearing the
condemnation petition.

 Zboyan argues the proposed wastewater treatment plant violates the Legislature's
declared general policy of "regionalization" expressed in Section 26.081 of the Texas Water
Code. See Tex. Water Code Ann. § 26.081(a) (Vernon 2000) ("The legislature finds and
declares that it is necessary to the health, safety, and welfare of the people of this state to
implement the state policy to encourage and promote the development and use of regional
and area-wide waste collection, treatment, and disposal systems to serve the waste disposal
needs of the citizens of the state and to prevent pollution and maintain and enhance the
quality of the water in the state."). The eminent domain power delegated by statute to the
utility district is subject to the state policy to encourage area-wide wastewater disposal
systems. Tex. Water Code Ann. § 49.230 (Vernon 2000). However, the utility district's
decision to build its own wastewater treatment facility, rather than pay for the expansion of
the wastewater treatment plant operated by Montgomery County Utility District No. 2, is not
an issue to be decided by a jury in the condemnation proceeding. See Wagoner, 345 S.W.2d
at 763-64. The implementation of the state's policy is the responsibility of the administrative
agency - the TCEQ - and is not delegated to juries considering individual condemnation
proceedings. See Tex. Water Code Ann. § 26.082 (Vernon 2000). 

 Our review of the trial court's judgment is limited to the evidence in the summary
judgment record. See Tex. R. Civ. P. 166a(c). The record reveals an ongoing administrative
action. If the permit is granted, there is nothing in the record to prevent the exercise by the
utility district of its power of eminent domain. At Zboyan's request, we also took judicial
notice of a preliminary administrative ruling. The administrative law judge recommended
the district's permit be denied, in part because the administrative law judge believed the
facility is not needed and granting the permit would conflict with the state regionalization
policy to encourage area-wide wastewater disposal systems. The district's power of eminent
domain as delegated by statute is subject to the state policy implemented by the TCEQ. It
is possible that Far Hills will ultimately be denied a permit on this basis and that the declared
public purpose for the exercise of eminent domain will be lost. The future decision of the
administrative agency, however, was neither a part of the trial court record nor of the
appellate record. It cannot be considered in this appeal. We affirm the judgment of the trial
court.

 AFFIRMED. 

 ______________________________

 STEVE McKEITHEN

 Chief Justice


Submitted on April 16, 2007

Opinion Delivered April 26, 2007

Before McKeithen, C.J., Gaultney and Horton, JJ.


CONCURRING IN PART AND DISSENTING IN PART



 We should not affirm the trial court's judgment without regard to whether the TCEQ
permit is granted. There remains the possibility Far Hills' permit will be denied by TCEQ
because of the state regionalization policy to encourage area-wide wastewater disposal
systems. While I concur with the Court's other rulings concerning the issues presented on
appeal, I respectfully dissent from the Court's judgment, because Far Hills has not obtained
a TCEQ permit for the wastewater treatment plant. As the Court explains, the district's
power of eminent domain, as delegated by statute, is subject to the state regionalization
policy implemented by TCEQ. 

 I agree with the Court's statement that if Far Hills is denied a permit by TCEQ, the
declared public purpose for the exercise of eminent domain will be lost. I would hold the
property may be taken by the district through the exercise of its delegated eminent domain
power only if the required TCEQ permit for the intended use of the property is obtained. The
cause should be remanded to the trial court with instructions for that court to stay the
condemnation proceeding until the permit is finally either granted or denied. See generally
Tex. R. App. P. 43.6. ("The court of appeals may make any other appropriate order that the
law and the nature of the case require."). If the permit is granted by TCEQ, the
condemnation of the property may then be approved by the trial court. If the permit is finally
denied, however, the district's condemnation petition should be dismissed.




 _____________________________

 DAVID GAULTNEY

 Justice


Delivered April 26, 2007
1. Zboyan also asks we take judicial notice that the Texas Commission on
Environmental Quality has not granted a new Texas Pollutant Discharge Elimination System
permit to the district, and asks that we stay our decision until the permitting process
concludes. The eminent domain powers delegated by statute to the district are "subject to"
the state policy of promoting regionalization, implemented by the TCEQ, to encourage area-wide waste water disposal systems. Tex. Water Code Ann. § 49.230 (Vernon 2000). The
TCEQ may deny a proposed permit based on consideration of need and regional treatment
options. See Tex. Water Code Ann. § 26.0282 (Vernon 2000). This is separate and apart
from the condemnation proceedings that were properly before the trial court.
2. According to the president of the board of Far Hills Utility District, the alternate plan
came about in an attempt to secure Zboyan's cooperation. After Zboyan rejected the offer
to buy an easement, the board proceeded with its original plan to condemn a fee simple
interest.
3. Zboyan's motion for summary judgment includes the author's/sponsor's statement
of intent for HB 1208. The statement of intent recites that "some districts abuse [the broad
power of eminent domain] by initiating condemnation proceedings concerning property
located outside of their district for purposes of constructing water/wastewater treatment
facilities."