ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

July 23, 2010

The Honorable Veronica Gonzales
Chair, Committee on Border and
    Intergovernmental Affairs
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0786

Re: Whether the common-law doctrine of incompatibility prohibits a member of the board of directors of the Agua Special Utility District from serving simultaneously as a member of the board of trustees of South Texas College (RQ-0813-GA)

Dear Representative Gonzales:

You ask whether the common-law doctrine of incompatibility prohibits a member of the board of directors of the Agua Special Utility District (the "Utility District") from serving simultaneously as a member of the board of trustees of South Texas College District (the "College District").[1] The College District's service area includes Hidalgo and Starr counties. TEX. EDUC. CODE ANN. § 130.199 (Vernon 2002); TEX. SPEC. DIST. CODE ANN. §§ 7201.002(b)(1), .102 (Vernon 2009). The Utility District's service area also includes portions of Hidalgo and Starr counties. TEX. SPEC. DIST. CODE ANN. §§ 7201.002(b)(1), .005, .102 (Vernon 2009). You state, however, that the College District is not currently a customer of the Utility District, and that the facilities of the College District are not currently located in the Utility District. Request Letter at 1. You inform us that a member of the Utility District board of directors has been elected to the College District board of trustees. Id. You explain the Utility District's concern that if the offices are incompatible under the common law, the officer may be deemed to have vacated the first office and would not be entitled to vote in the former office or to be counted for purposes of a quorum. Id.[2]

The common-law doctrine of incompatibility has three aspects: self-appointment, self-employment, and conflicting-loyalties incompatibility. See Tex. Att'y Gen. Op. No. GA-0224 (2004) at 2. The self-appointment aspect prohibits an individual from "appointing himself to another public position." Tex. Att'y Gen. Op. No. GA-0488 (2006) at 2. The self-employment aspect

---

[1]See Request Letter at 1 (available at http://www.texasattorneygeneral.gov). See generally TEX. EDUC. CODE ANN. § 130.199 (Vernon 2002) (describing service area to include Hidalgo and Starr counties); TEX. SPEC. DIST. CODE ANN. §§ 7201.001–.207 (Vernon 2009).

[2]You state that because neither office is compensated they are not offices of "emolument" and, consequently, the dual-officeholding provision of article XVI, section 40 of the Texas Constitution would not preclude one person from holding both offices simultaneously. Request Letter at 2.

"prevents one person from holding an office and an employment that the office supervises." Tex. Att'y Gen. Op. No. GA-0214 (2004) at 3. Considering that neither the College District board nor the Utility District board appoints or employs the other, the self-appointment and the self-employment aspects of common-law incompatibility are not applicable in this instance.

The remaining aspect of common-law incompatibility—conflicting-loyalties—precludes a person from simultaneously holding two offices that would prevent the person from exercising independent and disinterested judgment in either or both offices. Tex. Att'y Gen. Op. No. GA-0169 (2004) at 2. The doctrine was first articulated in *Thomas v. Abernathy County Line Independent School District*, 290 S.W. 152, 153 (Tex. Comm'n App. 1927, judgm't adopted). In *Thomas*, the court explained that two offices are incompatible when "there might well arise a conflict of discretion or duty" exercising the responsibility of each office. *Id.* In determining whether two offices are incompatible, "the crucial question is whether the occupancy of both offices by the same person is detrimental to the public interest or whether the performance of the duties of one interferes with the performance of those of the other." *State ex rel. Hill v. Pirtle*, 887 S.W.2d 921, 930 (Tex. Crim. App. 1994). Offices are not incompatible when "[n]either officer is accountable to the other, nor under his dominion . . . [, nor] subordinate to the other, nor has any power or right to interfere with the other in the performance of any duty." *State ex rel. Brennan v. Martin*, 51 S.W.2d 815, 817 (Tex. Civ. App.—San Antonio 1932, no writ).

As initially noted, the service area of the Utility District overlaps with a portion of the service area of the College District. When the geographical boundaries of two governmental entities overlap, offices on the boards of both entities are always potentially incompatible because the powers and duties of such boards are likely to conflict. Tex. Att'y Gen. Op. No. GA-0348 (2005) at 3. Consequently, we briefly review the powers and duties of the College District and the Utility District that are pertinent to your question.

The College District's primary role and mission is to provide educational programs to serve its taxing district and service areas. TEX. EDUC. CODE ANN. § 130.0011 (Vernon 2002). The College District board has powers of taxation for property located in its district. *Id.* § 130.121. The board is authorized to establish branch campuses and otherwise acquire land by purchase or lease in its service area. *Id.* § 130.086. The board also may acquire property by eminent domain. *Id.* §§ 130.084(a) (Vernon Supp. 2009) (powers of governing board of a junior college district are governed by applicable law governing board of independent school district), 11.155 (Vernon 2006) (eminent domain authority of independent school district). The College District may purchase goods and services such as water and other utilities. *Id.* §§ 44.031(j)(3)(1) (Vernon Supp. 2009), 130.010 (Vernon 2002).

The Utility District currently provides water service and is authorized by its organic statute to provide water, sewer, and contract services. Request Letter at 1; TEX. SPEC. DIST. CODE ANN. §§ 7201.102 (provision of services), 7201.207 (requiring allocation of costs concerning "intergovernmental, interlocal, or wholesale service contracts") (Vernon 2009). The Utility District also has powers and duties under chapters 49 and 65 of the Water Code. TEX. SPEC. DIST. CODE ANN. § 7201.002(b)(1) (Vernon 2009).

Chapter 49 of the Water Code applies to all general and special law districts. TEX. WATER CODE ANN. § 49.002 (Vernon 2008). A district may adopt and enforce necessary charges and fees for providing its services. *Id.* § 49.212(a) (Vernon Supp. 2009). A district may acquire property, improvements, and easements considered necessary to the district's purposes. *Id.* § 49.218 (Vernon 2008). A district may also exercise the power of eminent domain to condemn property inside or outside its boundaries necessary for its purposes. *Id.* § 49.222(a); *see also Zboyan v. Far Hills Util. Dist.*, 221 S.W.3d 924, 930 (Tex. App.—Beaumont 2007, no pet.) (upholding special utility district's condemnation of property outside of its boundaries). Under some circumstances, a district may provide services outside of its boundaries to areas contiguous to or in the vicinity of the district. TEX. WATER CODE ANN. § 49.215 (Vernon 2008).

Chapter 65 of the Water Code concerns special utility districts, which may be created to acquire and sell water, to provide fire fighting services, and to protect the purity and sanitary condition of water within the district. *Id.* § 65.012 (Vernon 2004). A special utility district may acquire and operate facilities to provide water, sewage, irrigation, storm or excess harmful water drainage, and firefighting services. *Id.* § 65.201(a)–(b). A special utility district has rule-making authority to, among other things, " preserve the purity and sanitary condition of all water controlled by the district," prevent waste, and "provide and regulate a safe and adequate freshwater distribution system." *Id.* § 65.205. A special utility district does not, however, possess authority to assess or collect taxes. *Id.* § 65.235.

We first consider whether the Utility District's regulatory authority renders an office on its board and an office on the College District board incompatible. In *Thomas*, a city's authority to regulate "health, quarantine, sanitary, and fire prevention" applicable to a school located within the city's borders rendered the offices of city alderman and school trustee incompatible. *Thomas*, 290 S.W. at 153. As explained above, the Utility District has regulatory authority concerning water, sewage, irrigation, drainage, and fire-fighting services. TEX. WATER CODE ANN. § 65.201(b) (Vernon 2004). Nevertheless, it is difficult to determine the potential conflict between the Utility District's regulatory authority and functions of the College District board "solely by studying the statutory authority of each office, without additional information about the consequences for the other office for exercising statutory powers." Tex. Att'y Gen. LO-92-005, at 3 n.2. The Utility District's exercise of regulatory authority concerning matters such as drainage or maintaining water purity could, depending on the particular facts, affect the College District's interests even though its facilities are located outside the Utility District's service area. Moreover, while the College District's facilities are not currently located in the Utility District's service area, the College District has the authority to establish a branch campus or otherwise acquire property within that area. TEX. EDUC. CODE ANN. § 130.086 (Vernon 2002). Without additional facts, we are unable to assess the likelihood that the College District will be subject to the regulatory authority of the Utility District, either presently or in the future. Thus, the Utility District's regulatory authority remains a potential basis for rendering offices on its board and on the College District board incompatible.

Second, we consider the districts' respective authority to tax. On several occasions, this office has determined that "[i]f two districts with overlapping geographical jurisdictions each have the power of taxation, . . . the potential for conflict is insurmountable." *See* Tex. Att'y Gen. Op. No.

GA-0348 (2005) at 4 (quoting Tex. Att'y Gen. Op. No. GA-0032 (2003) at 5). Because "the object of each district [having the authority to tax] is to maximize its own revenues, a single individual would have great difficulty in exercising his duties to two separate and competing masters." Tex. Att'y Gen. Op. No. JC-0557 (2002) at 5; *accord* Tex. Att'y Gen. Op. Nos. GA-0307 (2005) at 5, GA-0032 (2003) at 5. As noted above, however, the College District has the authority to tax in its service area but the Utility District does not possess taxation authority.[3] The conflict that arises when one person holds two offices with overlapping taxation authority is not present in the circumstances you describe. *Cf.* Tex. Att'y Gen. Op. No. GA-0348 (2005) at 3–4 (determining that offices of county commissioner and municipal judge are not incompatible, in part because "[o]ne person holding both positions would not have overlapping taxation authority"). Consequently, the College District's taxing authority, considered alone, does not implicate the doctrine of conflicting-loyalties incompatibility.

Third, we consider the contracting authority of the districts. "We have said where two governmental bodies are authorized to contract with each other, one person may not serve as a member of both." Tex. Att'y Gen. Op. No. GA-0348 (2005) at 3.[4] In prior opinions, this office has determined that mutual contracting authority renders particular offices incompatible as a matter of law, such as when the authority of the two entities to contract with each other is extensive, or when contracting authority is one of several bases of incompatibility. *See* Tex. Att'y Gen. Op. Nos. GA-0015 (2003) at 2 (determining that the offices of county commissioner and city council member are incompatible as a matter of law because of the numerous statutes authorizing contracts between a county and a city located in the county); JC-0455 (2002) at 5–6 (concluding that offices with ground water conservation district board and a county commissioners court are incompatible because of the common authority with respect to contract, taxation, eminent domain, and water regulation); Tex. Att'y Gen. LO-95-052, at 2–3 (determining that statutes authorizing the Texas Board of Criminal Justice to contract with counties concerning a state jail felony facilities prohibited a county judge from simultaneously serving on the state board). On the other hand, this office has also stated that whether the contracting authority of governmental entities renders offices on their boards incompatible may depend on particular facts and circumstances. *See* Tex. Att'y Gen. Op. No. JM-1266 (1990) at 5 (determining that "[c]ommon-law incompatibility may, depending on the circumstances, bar one individual from serving both as city council member and as director of a navigation district, but it does not do so as a matter of law").

---

[3]*See* TEX. EDUC. CODE ANN. § 130,121 (Vernon 2006) (junior college district board's authority to cause tax assessment and collection); TEX. WATER CODE ANN. § 65.235 (Vernon 2004) ("Prohibition on Assessment or Collection of Taxes," applicable to special utility districts).

[4]*See* Tex. Att'y Gen. Op. Nos. JM-1266 (1990) at 4 (stating that when "the two political subdivisions contract with each other, there probably exists sufficient potential for conflicting loyalties as to render the two positions incompatible"), JM-172 (1984) at 2 (stating that river authority board members "and persons holding offices in the governments of cities contracting with the authority occupy incompatible posts"); Tex. Att'y Gen. LO-90-018, at 1 (offices on city council and water district board are incompatible because of the likelihood of contracts between water district and a city located in the district).

As discussed above, the College District has contractual authority to acquire water and other services, and the Utility District has authority to provide such services. You suggest that an actual contract is unlikely because the College District's facilities are not located in the Utility District's service area. Request Letter at 1. However, while the boards may not contemplate a contract between the districts at present, they may do so in the future. The Utility District is authorized to provide service to "areas contiguous to or in the vicinity of the district," provided it does not duplicate the services of another public entity. TEX. WATER CODE ANN. § 49.215 (Vernon 2008). Thus it is possible that the Utility District could provide services to the College District's current facilities. Moreover, as discussed above, the College District is authorized to acquire property or facilities in the Utility District's service area. TEX. EDUC. CODE ANN. § 130.086(a), (c) (Vernon 2002). The districts are authorized to contract with each other and the facts provided do not preclude the possibility that they may do so in the future. Consequently, contract authority remains a potential basis of incompatibility for an individual to serve simultaneously on both boards.

Finally, we consider the districts' respective powers of eminent domain. Both the College District and the Utility District possess eminent domain authority. Request Letter at 1, 3.[5] Additionally, the Utility District's eminent domain authority is not limited to its service area, but it possesses eminent domain authority to acquire property "inside or outside the district boundaries, or the boundaries of the certified service area." TEX. WATER CODE ANN. § 49.222(a) (Vernon 2008); *see also Zboyan*, 221 S.W.3d at 930 (upholding special utility's condemnation of property outside of its boundaries). This office has determined in two opinions that the eminent domain authority of one or both may be at least a factor that rendered offices on the governing bodies of the entities incompatible. *See* Tex. Att'y Gen. Op. Nos. JC-0455 (2002) at 5–6 (concluding that county's and groundwater district's respective powers of eminent domain as well as taxation, contracting, and water-related powers rendered offices of county commissioner and district director incompatible), JC-0363 (2001) at 2 (noting that city and hospital district powers of taxation and eminent domain rendered offices of mayor and district director incompatible). In opinion JC-0363, the conflict in positions was actual, because the hospital district had condemned property in a city, which the city counsel had gone on record as opposing. Tex. Att'y Gen. Op. No. JC-0363 (2001) at 2. You have not provided any facts or circumstances concerning the eminent domain authority or plans of either district. No opinion of which we are aware has considered whether the mere existence of eminent domain authority by two entities with overlapping boundaries renders offices on the boards of such entities incompatible. Nevertheless, the exercise of eminent domain authority by the board of one of the districts could, depending on the particular facts, affect the interests of the other district.

In conclusion, based on the facts provided, it seems likely that an office on the board of directors of Agua Special Utility District is incompatible with an office on the board of trustees of

---

[5]*See* TEX. EDUC. CODE ANN. § 130.084(a) (Vernon Supp. 2009) (powers of governing board of a junior college district are governed by applicable law governing board of independent school district); *id.* § 11.155 (Vernon 2006) (eminent domain authority of independent school district); TEX. SPEC. DIST. CODE ANN. § 7201.101 (Vernon 2009) (district generally has powers of a district created under article XVI, section 59 of the Texas Constitution, including chapters 49 and 65 of the Texas Water Code); TEX. WATER CODE ANN. § 49.222(a) (Vernon 2008) (district's general eminent domain authority).

South Texas College District because of the Utility District's regulatory authority and the authority of each district with respect to contracting and eminent domain. However, because of the unique facts concerning the location of the College District's facilities, we are unable to say that the offices are incompatible as a matter of law.

## S U M M A R Y

While the offices of member on the board of directors of the Agua Special Utility District and member on the board of trustees of South Texas College District are likely incompatible under the common-law doctrine of conflicting-loyalties incompatibility, we are unable to make that determination as a matter of law.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

ANDREW WEBER
First Assistant Attorney General

NANCY S. FULLER
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee